37 P.3d 280 (2002)
STATE of Washington, Respondent,
v.
John K. McNEAL, Petitioner.
No. 68989-0.
Supreme Court of Washington, En Banc.
January 3, 2002.
*281 Jeffrey Erwin Ellis, Attorney at Law, Austin, Amicus Curiae on Behalf of Washington Association of Criminal Defense Attorney.
John Kevin McNeal, Aberdeen, Thomas Edward Doyle, Attorney at Law, Hansville, Patricia Anne Pethick, Attorney at Law, Tacoma, Counsel for Petitioner.
Jeremy Randolph, Lewis County Prosecutor, J. Andrew Toynbee, Deputy, Chehalis, Counsel for Respondent.
ALEXANDER, C.J.
The principal issues presented by this appeal are whether John McNeal's failure to object at trial to what he now claims are inconsistent jury verdicts constituted a waiver of his right to raise that objection on appeal and, if so, whether his trial counsel's failure to raise the objection on McNeal's behalf amounted to ineffective assistance of counsel. Because we conclude that the jury was presented with sufficient evidence to support both verdicts, we answer each of these questions in the negative. Accordingly, we affirm the Court of Appeals.

*282 I. FACTS
On July 5, 1996, McNeal drove his car across the centerline of Bunker Creek Road in Lewis County causing the car to strike another motor vehicle head-on. Although McNeal suffered a relatively minor injury, a broken arm, the driver of the other vehicle sustained serious injuries and a passenger in that car was killed. Shortly thereafter, a police officer who had arrived at the scene of the accident discovered a "fanny pack" in McNeal's car which contained four baggies of methamphetamine, a used syringe, and a razor blade. The police officer also found $4,250 in cash in McNeal's pants pocket.
McNeal was charged with vehicular homicide, vehicular assault, and possession of methamphetamine with the intent to deliver. The information charging vehicular assault contained the allegation that McNeal had operated his car while "under the influence of a drug." Clerk's Papers (CP) at 85. At trial, the jury was presented with evidence consistent with that allegation. Significantly, evidence of a test of McNeal's blood was admitted and it revealed that he had a concentration of .31 milligrams of methamphetamine per liter of his blood.
A jury found McNeal guilty of all three charges. Because the jury was instructed that one is guilty of vehicular assault if he operates a motor vehicle while "under the influence of drugs" and "cause[s] serious bodily injury to another," but was not instructed that operation of a vehicle in a reckless manner or while under the influence of alcohol were predicates for the vehicular assault charge, the vehicular assault verdict implied that McNeal was operating his motor vehicle while "under the influence of drugs" at the time he committed the offense.[1] CP at 32. On the other hand, in finding McNeal guilty of vehicular homicide the jury made special findings that McNeal operated the motor vehicle "with disregard for the safety of others" and that he was not "operating the motor vehicle [ ] while under the influence of drugs." CP at 51.
Although McNeal did not raise any objection at trial to the jury verdicts, he asserted at the Court of Appeals that the vehicular assault verdict was inconsistent with the vehicular homicide verdict in that the former implied that he was under the influence of a drug while the latter indicated that he was not. This apparent inconsistency, he argued, rendered the vehicular assault verdict void. The Court of Appeals disagreed with McNeal and affirmed the trial court. We granted review on the limited issues of whether McNeal waived his right to challenge the vehicular assault verdict by failing to raise the alleged inconsistency of the verdicts at trial and, if so, whether his trial counsel's failure to raise that objection on his behalf amounted to ineffective assistance of counsel.

II. ANALYSIS

A. Waiver
McNeal contends here, as he did at the Court of Appeals, that the vehicular assault verdict is irreconcilably inconsistent with the vehicular homicide verdict and, as a consequence, is void. He asserts in that regard that the special finding on the vehicular homicide verdict to the effect that he was not operating his vehicle while under the influence of an intoxicating drug is entirely inconsistent with the vehicular assault verdict that implied that he was under the influence of an intoxicating drug.
Although McNeal concedes that he did not object to either jury verdict at trial, he claims that the alleged inconsistency is a manifest error affecting a constitutional right that may be raised for the first time on appeal. RAP 2.5(a); State v. Scott, 110 Wash.2d 682, 686, 757 P.2d 492 (1988). The State, citing State v. Barnes, 85 Wash.App. 638, 668, 932 P.2d 669, review denied, 133 Wash.2d 1021, 948 P.2d 389 (1997), responds that McNeal waived his right to challenge what he now contends are inconsistent verdicts by failing to object to the alleged inconsistency prior to the time the jury was discharged. While we agree with McNeal that *283 a claim of manifest error affecting a constitutional right may be raised for the first time on appeal, an appellant does not establish manifest error merely by showing that jury verdicts appear to be inconsistent. We reach this conclusion because the appellant has the burden to demonstrate that the alleged error actually affected his or her rights. "[I]t is this showing of actual prejudice that makes the error `manifest', allowing appellate review." State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995) (emphasis added) (citing Scott, 110 Wash.2d at 688, 757 P.2d 492).
McNeal attempts to show manifest error by asserting that the special finding which supported the vehicular homicide verdictthat he was not operating his vehicle while under the influence of drugscontrols the general verdict that McNeal was operating his vehicle "under the influence of drugs." That inconsistency between the verdicts, he contends, is prejudicial in that the vehicular assault conviction is void. Thus, he suggests a manifest error is presented.
Our decision in State v. Ng, 110 Wash.2d 32, 750 P.2d 632 (1988), guides us when we are called upon to determine whether an apparent inconsistency between jury verdicts renders a challenged conviction void.[2] One of the defendants, in that case, Wai-Chiu "Tony" Ng, was charged with 13 counts of first degree felony murder. The "to convict" jury instruction relating to each charge of felony murder required a finding by the jury that Ng participated in a robbery and caused a particular victim's death. Despite the fact that Ng had not disputed the State's allegation that the killings had occurred, the jury rendered a verdict that he was not guilty on all of the counts of felony murder. It did, however, render a verdict that he was guilty of 13 counts of the lesser included offense of first degree robbery. In rejecting Ng's challenge to the robbery verdicts, we indicated that although the verdicts were "inconsistent," the convictions should be upheld "[w]here the jury's verdict is supported by sufficient evidence from which it could rationally find the defendant guilty beyond a reasonable doubt." Ng, 110 Wash.2d at 48, 750 P.2d 632 (citing United States v. Powell, 469 U.S. 57, 67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984)). We indicated that we reached this conclusion in order to protect "considerations of jury lenity" and to avoid the "problems inherent in second-guessing the jury's reasoning." Ng, 110 Wash.2d at 48, 750 P.2d 632. Because we determined that the challenged jury verdicts were supported by sufficient evidence from which a rational trier of fact could find Ng's guilt beyond a reasonable doubt, we held that the apparent inconsistency between the verdicts was not "reversible error." Ng, 110 Wash.2d at 48, 750 P.2d 632.
McNeal argues that Ng is inapplicable, pointing out that in that case we were confronted with general verdicts, some finding the defendant guilty and an equal number finding the defendant not guilty. Here, he notes the inconsistency is between a general verdict of guilty on one charge and a special finding supporting a guilty verdict on another charge. The Ng rule, he posits, is, therefore, inapplicable and his objection to the verdicts was not waived. McNeal does not, however, provide any authority or convincing argument to support the distinction he draws. After considering the argument, we are persuaded that it is as problematic for courts to second-guess a jury's reasoning where the inconsistency is between a special finding and a general verdict as it is when the inconsistency is between two general verdicts. Indeed, the Court of Appeals has upheld jury verdicts despite an inconsistency between a general verdict and a special finding where there was "abundant evidence" to support each verdict. State v. Peerson, 62 Wash.App. 755, 766, 816 P.2d 43 (1991), review *284 denied, 118 Wash.2d 1012, 824 P.2d 491 (1992). In sum, we are persuaded that the rule we established in Ng is applicable here.[3] Accordingly, we limit our review to the question of whether there is sufficient evidence in the record to support the jury's finding of guilt.
In determining whether evidence supports a jury verdict, we are required to view the evidence in a light most favorable to the State. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Salinas, 119 Wash.2d at 201, 829 P.2d 1068. Here, McNeal challenges only the sufficiency of the evidence supporting the vehicular assault verdict. A review of the record reveals that the jury was presented with significant evidence to support its determination that McNeal operated his motor vehicle while under the influence of drugs. As noted, there was evidence that McNeal's blood contained a concentration of .31 milligrams of methamphetamine per liter. Washington State toxicologist, Dr. Barry Logan, testified about the effects that a person would experience with such a concentration of methamphetamine in his or her blood. He indicated in that regard that among the symptoms of methamphetamine intoxication are fatigue, lethargy, and subdued behavior. He also testified that these symptoms are associated with the so-called "crash phase" of methamphetamine intoxication and can impair one's ability to drive.[4] Logan discussed an extensive study that he had made regarding accidents caused by drivers under the influence of methamphetamine. His study found that 85 percent of such accidents were caused by drivers who experienced "crash phase" symptoms and left their lane of travel.
The State produced testimony indicating that McNeal displayed these symptoms of methamphetamine intoxication. For example, three witnesses testified that McNeal appeared fatigued or lethargic at the time of the accident. Notably, a state trooper testified that McNeal's demeanor was "lethargic... not real excited" and that he was "more subdued" than normal especially considering he broke his arm in the automobile accident. Verbatim Report of Proceedings (VRP) at 30, 31. Similarly, when asked about the signs McNeal displayed indicating that he was under the influence of a controlled substance, a trooper testified that McNeal did not "have much of a reaction" at the time of the accident "considering the injuries he sustained." VRP at 136. Likewise, an attending nurse testified that McNeal "seemed lethargic" when she was drawing his blood at the hospital. VRP at 177. Moreover, we believe that the act of driving into oncoming traffic with a.31 methamphetamine blood concentration is indicative of impairment. This is consistent with Logan's testimony that 85 percent of methamphetamine related accidents were caused by an impaired driver crossing the *285 centerline. In sum, when this evidence is viewed in the light most favorable to the State, we conclude that it is sufficient to support the implied finding of the jury that McNeal was under the influence of methamphetamine as well as its verdict that he was guilty of vehicular assault.[5]
Because there was sufficient evidence to support the vehicular assault verdict, the apparent inconsistency between that verdict and the vehicular homicide verdict may be attributed to "considerations of jury lenity." In other words, it is reasonable to assume that the jury found McNeal guilty of vehicular homicide on the basis that he operated a motor vehicle with disregard for the safety of others, rather than while under the influence of drugs, believing that the former way of committing the offense implied less culpability than the latter way of committing the offense.[6] The vehicular assault verdict is, therefore, not void. Consequently, it cannot be said that the apparent inconsistency of the verdicts is a manifest error affecting a constitutional right. McNeal, therefore, waived his right to challenge the verdict by failing to raise the issue before the jury was discharged.

B. Ineffective Assistance of Counsel
McNeal contends, additionally, that his trial counsel was aware of the alleged inconsistency between the verdicts and that the failure to object before the jury was discharged constituted ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a defendant must establish both ineffective representation and resulting prejudice. State v. Rosborough, 62 Wash.App. 341, 348, 814 P.2d 679, review denied, 118 Wash.2d 1003, 822 P.2d 287 (1991). To establish ineffective representation, the defendant must show that counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish prejudice, a defendant must show that but for counsel's performance, the result would have been different. State v. Early, 70 Wash.App. 452, 460, 853 P.2d 964 (1993), review denied, 123 Wash.2d 1004, 868 P.2d 872 (1994). There is a strong presumption that trial counsel's performance was adequate, and exceptional deference must be given when evaluating counsel's strategic decisions. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. If trial counsel's conduct can be characterized as legitimate trial strategy or tactics, it cannot serve as a basis for a claim that the defendant received ineffective assistance of counsel. State v. Adams, 91 Wash.2d 86, 90, 586 P.2d 1168 (1978).
Here, McNeal's trial counsel's failure to object to what he now claims are inconsistent verdicts was not ineffective assistance. As discussed above, the failure to object did not amount to manifest error affecting a constitutional right because each verdict was supported with sufficient evidence. Accordingly, McNeal was not prejudiced by his trial counsel's failure to object to what he now claims are inconsistent verdicts.
Furthermore, it is likely that his trial counsel's decision was strategic. Had McNeal objected at trial to the apparent inconsistency between jury verdicts, the trial court might well have ordered the jury to resume deliberations in order to resolve the alleged inconsistency. Because the jury had already found McNeal guilty on both charges, his counsel could have rationally assumed that the jury would resolve the inconsistency by returning a special finding on the vehicular homicide charge that McNeal drove a motor vehicle while "under the influence of drugs" in addition to driving "with disregard for the safety of others." McNeal's counsel might have feared that the trial court, faced with such findings, would impose a greater penalty than it would have imposed based merely on McNeal's driving with disregard for the safety of others. As indicated above, a special finding by the jury on the vehicular homicide charge that McNeal was under the *286 influence of drugs would have increased the seriousness level of that offense from VII to XI. RCW 9.94A.320. This would have resulted in a corresponding increase in McNeal's standard sentence range. RCW 9.94A.310. By not objecting, McNeal's counsel eliminated the possibility that the jury might harmonize the verdicts in a way that would not have been favorable to his client. The record, therefore, supports a conclusion that counsel's failure to object was a tactical decision intended to avoid the imposition of harsher punishment on the client. Accordingly, we defer to trial counsel's decision and conclude that his failure to object to the verdicts was not ineffective assistance.

III. CONCLUSION
For reasons stated above, we affirm the Court of Appeals. We hold that because the vehicular assault verdict is supported by sufficient evidence the apparent inconsistency between the vehicular assault and vehicular homicide verdicts is not a manifest error affecting a constitutional right. We further hold that McNeal's trial counsel did not provide ineffective assistance.
Affirmed.
MADSEN, IRELAND, BRIDGE, JJ., and GUY, J.P.T., concur.
SANDERS, J. (dissenting).
The majority attempts to reconcile two logically inconsistent convictions by relying on a rule of law developed to address a situation entirely different from ours. The rule from State v. Ng, 110 Wash.2d 32, 750 P.2d 632 (1988) applies to inconsistencies between convictions and acquittals, not to inconsistent convictions. Neither does Ng apply to inconsistencies between special verdicts and general verdicts.
This case is controlled by RCW 4.44.440, under which special verdicts control general verdicts. Here the jury returned a special verdict convicting McNeal of vehicular homicide, and found he was not under the influence of drugs. This is in direct contrast to its general verdict convicting him of vehicular assault, as part of which the jury found McNeal was under the influence of drugs.
The two verdicts cannot be reconciled, wherefore the special finding McNeal was not under the influence controls. Under the law of this case, driving under the influence was the only basis upon which this jury could find McNeal guilty of vehicular assault. This basis was removed as part of the homicide verdict. I would therefore vacate McNeal's assault conviction.

Ng Does Not Apply to Inconsistent Convictions
Although the majority opinion correctly sets forth the requirements of the Ng rule in its abstract, it fails to recognize this rule does not apply to our situation. The Ng rule applies to inconsistencies between convictions and acquittals not inconsistencies between two or more convictions. See Ng, 110 Wash.2d at 45, 750 P.2d 632. See generally W.E. Shipley, Annotation, Inconsistency of Criminal Verdict as Between Different Counts of Indictment or Information, 18 A.L.R.3d 259, 283 § 5 (1968) (discussing decisions recognizing the distinction between conviction-acquittal inconsistencies and conviction-conviction inconsistencies). In Ng we declined to vacate convictions for robbery based on inconsistent acquittals for felony murder returned by the same jury. Ng, 110 Wash.2d at 45, 750 P.2d 632. We held convictions will not be reversed even if inconsistent with acquittals on other counts as long as "the jury's verdict is supported by sufficient evidence from which it could rationally find the defendant guilty beyond a reasonable doubt." Id. at 48, 750 P.2d 632; cf. majority at 283.
Our decision in Ng was based on United States Supreme Court decisions in Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932) and United States v. Powell, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). See Ng, 110 Wash.2d at 48, 750 P.2d 632. A careful study of Dunn and Powell reveals the critical distinction between conviction-acquittal inconsistencies and conviction-conviction inconsistencies and why Ng does not apply here.
The facts of Dunn stem from the days of prohibition. Dunn was indicted for maintaining *287 a common nuisance of selling liquor, unlawful possession of liquor, and unlawful sale of liquor. Dunn, 284 U.S. at 391-92, 52 S.Ct. 189. Although he was acquitted of the latter two counts, Dunn was convicted of the first count. Id. Despite the apparent inconsistency of the verdicts the Court declined to strike down Dunn's conviction because to do so would require speculation or improper inquiry into the jury's basis for returning the verdicts. Id. at 393-94, 52 S.Ct. 189.
The Court reaffirmed Dunn some 50 years later in Powell, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461.
Like Dunn and Ng, but unlike here, Powell addressed inconsistent acquittals and convictions. The jury in Powell acquitted the defendant of the predicate crimes of conspiracy to possess cocaine and possession of cocaine but convicted on the compound crime of using the telephone to facilitate these crimes. Powell, 469 U.S. at 60, 105 S.Ct. 471. Nevertheless, the Court refused to vacate the guilty verdict merely because it was inconsistent with the acquittals. Id. Rather it followed Dunn and rejected "as imprudent and unworkable[] a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them." Powell, 469 U.S. at 66, 105 S.Ct. 471.
Important to the Court's decision was that very notion of jury lenity. The Powell Court recognized when the inconsistency is between a conviction and an acquittal, letting the judgment stand gives the defendant "the benefit of [his or] her acquittal on the counts on which [he or] she was acquitted." Id. at 69, 105 S.Ct. 471. The same is obviously not true when, as here, the inconsistency is between factual findings in two convictions. The majority discusses lenity but fails to recognize that distinctionlenity is not an issue here since the jury convicted on all counts.
Lenity played an important role in Dunn and Powell, which is crucial to understand why it plays no role here. The rule expressed in Ng, stemming as it does from Dunn and Powell, is based on courts' respect for the historic role of juries in the Anglo American criminal justice system. See Powell, 469 U.S. at 65-66, 105 S.Ct. 471. In general, courts have taken the approach that to vacate a conviction based on inconsistent acquittals would require voiding the judgment as a whole, including the acquittals. See generally Eric L. Muller, The Hobgoblin of Little Minds? Our Foolish Law of Inconsistent Verdicts, 111 Harv. L.Rev. 771 (1998). Thus the Ng rule is based in large part on deference to the "unreviewable power of a jury to return a verdict of not guilty for impermissible reasons." Harris v. Rivera, 454 U.S. 339, 345-46, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981). Should a court strike down a judgment merely because a conviction is inconsistent with an acquittal, it would upset the jury's function "as a check against arbitrary or oppressive exercises of power by the Executive Branch." Powell, 469 U.S. at 65-66, 105 S.Ct. 471.
This power of lenity is of course of utmost importance. However, recognizing the inconsistent factual findings in convictions would in no way jeopardize the traditional role of juries to return acquittals for any reason, or no reason at all. Applying that principle here, recognizing the inconsistency between the conviction for vehicular assault, in which the jury found McNeal was under the influence of drugs, and that for vehicular homicide, in which the jury found McNeal was not so influenced, would not undermine a jury's power "to return a verdict of not guilty for impermissible reasons." Harris, 454 U.S. at 345-46, 102 S.Ct. 460 (emphasis added). Again, there is no verdict of not guilty to strike down.
This is why we do not engage in speculation or inquiries into jury deliberations by trying to decide what the jury meant by convicting on one count and acquitting on another. Cf. Powell, 469 U.S. at 66, 105 S.Ct. 471. To vacate a conviction based on an inconsistent acquittal would require us to assume "the acquittal on [one of the counts] was properthe one the jury `really meant.' This, of course, is not necessarily correct; all we know is that the verdicts are inconsistent." Id. at 68, 105 S.Ct. 471.
*288 The propriety of Dunn, Powell, and Ng aside, no such divine speculation or improper inquiry is required here. We need not ask ourselves what the jury must have been thinking in rendering inconsistent convictions and acquittals since that is not where the inconsistency lies.
All we need do is to look at the face of the two convictions to realize they are logically inconsistent. McNeal cannot be both under the influence of drugs and not under the influence of drugs all at the same time. Cf. Rosenthal v. United States, 276 F. 714 (9th Cir.1921) (striking down logically inconsistent verdicts which found the defendant guilty of both selling and receiving the same stolen goods); Thomas v. United States, 314 F.2d 936 (5th Cir.1963) (striking down as inconsistent convictions for smuggling marijuana into the United States and obtaining the same marijuana in the United States); Allison v. Mayo, 158 Fla. 700, 29 So.2d 750 (1947) (striking down as inconsistent convictions for breaking and entering and also of breaking without entering).
On that issue, how to address logically inconsistent guilty verdicts, neither the Supreme Court nor we have spoken. See, e.g., Powell, 469 U.S. at 69 n. 8, 105 S.Ct. 471 ("Nothing in this opinion is intended to decide the proper resolution of a situation where a defendant is convicted of two crimes, where a guilty verdict on one count logically excludes a finding of guilt on the other."). See also Muller, supra, at 773 n. 2.
This critical distinction between conviction-acquittal inconsistencies and conviction-conviction inconsistencies was summarized in United States v. Daigle, 149 F.Supp. 409 (D.D.C.), aff'd, 248 F.2d 608 (D.C.Cir.1957):
It has often been held that rational consistency in a verdict is not necessary, and that each count in the indictment is to be regarded as if it were a separate indictment. Dunn [v. United States], 284 U.S. [390,] 393[, 52 S.Ct. 189, 76 L.Ed. 356 (1932) ]. Where inconsistent verdicts of conviction and acquittal are returned, it has been said: "While the verdict as to each count must be consistent in itself, the verdicts on the several counts need not be consistent with each other. The question... is not whether the verdict of guilty ... is consistent with the verdict of acquittal on the other counts. It is whether it is consistent with the evidence, that is whether the evidence supports the verdict, and this is true even though the inconsistency can be explained upon no rational considerations."
On the other hand, where a guilty verdict on one count negatives some fact essential to a finding of guilty on a second count, two guilty verdicts may not stand.
Daigle, 149 F.Supp. at 413-14 (citations omitted) (quoting Mogoll v. United States, 158 F.2d 792, 793, rev'd on other grounds by 333 U.S. 424, 68 S.Ct. 487, 92 L.Ed. 783 (1948)).
Here, the jury's verdict on vehicular homicide negatives the one fact on which a finding of guilty for vehicular assault hinged. In its homicide verdict the jury specifically found McNeal was not operating under the influence. Because of the erroneous information and instruction, that was the only option on which McNeal could be found guilty of vehicular assault. Consequently, the assault conviction cannot stand.

Ng Does Not Apply to Inconsistencies Between Special Verdicts and General Verdicts
Furthermore, Ng does not control the interaction between inconsistent general and special verdicts. Ng was decided based on inconsistent general verdicts and did not address inconsistencies between general and special verdicts. 110 Wash.2d at 48, 750 P.2d 632. The majority rejected McNeal's argument to this effect, claiming there is no authority to support this distinction. See majority at 283. Quite the contrary, RCW 4.44.440 provides all the authority we need:
4.44.440 Special verdict controls. When a special finding of facts shall be inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly.
This statute applies in criminal proceedings. State v. Robinson, 84 Wash.2d 42, 45, 523 P.2d 1192 (1974).
Based on the plain language of RCW 4.44.440, the special verdict on the vehicular *289 homicide count controls the general verdict on the vehicular assault charge. Thus, the jury's finding as part of the vehicular homicide conviction that McNeal was not under the influence of drugs controls. Consequently, the jury's conviction on the vehicular assault, which hinged on McNeal being so influenced, should be vacated on this ground as well.

Conclusion
The logical inconsistency between the jury's homicide and assault verdicts is a manifest error, which McNeal properly could raise for the first time on appeal. See State v. Scott, 110 Wash.2d 682, 686, 757 P.2d 492; RAP 2.5(a)(3). I would hold RCW 4.44.440 mandates special verdicts control inconsistent general verdicts. Pursuant to this mandate the jury's special finding McNeal was not under the influence of drugs controls. This renders his vehicular assault conviction void. I would vacate this conviction, wherefore I dissent.
SMITH and JOHNSON, JJ., concur.
NOTES
[1] RCW 46.61.522 provides that a person is guilty of vehicular assault if he operates or drives any vehicle: (a) in a reckless manner, or (b) while under the influence of intoxicating liquor or any drug and this conduct is the proximate cause of serious bodily injury to another.
[2] The dissent asserts that "[t]his case is controlled by RCW 4.44.440," noting that this statute says that "a special finding" controls "the [inconsistent] general verdict." Dissent at 286; RCW 4.44.440 (emphasis added). Even assuming that RCW 4.44.440, a civil procedure statute, applies to criminal cases, it is clear that that statute does not control here. A plain reading of the statute reveals that "a" special finding controls only "the" general verdict on the charge to which it relates. This does not mean, as the dissent asserts, that a special finding to one charge controls a verdict on a separate charge. Had the legislature such an intention, it would likely have used the phrase "general verdicts" rather than the phrase "the general verdict."
[3] Although the dissent indicates agreement with our analysis that the "power of [jury] lenity is ... of utmost importance," dissent at 287, it notes that Ng addressed "inconsistencies between convictions and acquittals not inconsistencies between two or more convictions," dissent at 286, and asserts that the Ng rule is not applicable because "lenity is not an issue here since the jury convicted on all counts." Dissent at 287. The dissent's analysis fails to consider that jury lenity holds an important role even where the jury convicts on all counts. Indeed, if the jury had made a special finding on the vehicular homicide charge that McNeal was under the influence of drugs, the finding would have increased the seriousness level of that offense from VII to IX under RCW 9.94A.320 and resulted in a corresponding increase in McNeal's standard sentence range.
[4] Dr. Logan described two stages of methamphetamine intoxication, the "stimulant phase" and the "crash phase." The stimulant phase, he explained, is the initial high immediately following the administration of the drug and is often accompanied by a person staying "awake, [or] alert for a day or more." Verbatim Report of Proceedings (VRP) at 197. Logan characterized the crash phase as the result of "sleep debt" during which time a person falls in and out of a "restless, prolonged sleep." VRP at 198. Logan indicated that a person can have the same methamphetamine blood concentrations in each phase, yet experience different symptoms. Logan also indicated that each set of symptoms can impair the ability to drive a car. Stimulant phase symptoms include being "excited, stimulated, [and] experiencing rapid flight of ideas." VRP at 215. Crash phase symptoms include being "fatigued ... sleepy ... [and subject to] effectively just pass[ing] out." VRP at 215-16.
[5] The jury was instructed that "[a] person is under the influence of or affected by the use of drugs if the person's ability to drive a motor vehicle is lessened in any appreciable degree." CP at 33.
[6] See Ng, 110 Wash.2d at 48, 750 P.2d 632.