FILED
COURT OF APPEALS
DIVISION II

2014 JUL -8 AM 10: 09

STATE OF WASHINGTON

BY_____
              DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44325-2-II |
| Respondent, | |
| v. | |
| THOMAS JOSEPH ROMAN, | UNPUBLISHED OPINION |
| Appellant. | |

HUNT, P.J. — Thomas Joseph Roman appeals his jury trial conviction for second degree assault by strangulation. He argues that (1) the trial court abused its discretion in refusing to instruct the jury on the lesser degree offense of fourth degree assault, (2) the State violated his constitutional right to remain silent because Officer Derek Makein impermissibly testified about Roman's exercise of his right to remain silent, and (3) defense counsel's failure to object to Makein's testimony constituted ineffective assistance of counsel. We affirm.

## FACTS

### I. ASSAULT

Roman and Angela Roman[1] are husband and wife. On September 30, 2012, Angela asked Roman for the car keys; when he refused, she reached into his pocket for the keys. Roman grabbed her arm, bit her, and punched her in her chest, causing her to fall; at this point, Roman had Angela in "kind of a headlock." 2 Verbatim Report of Proceedings (VRP) at 213. When Angela stood up, she screamed for help. Officer Derek Makein, who was patrolling in the area,

---

[1] To avoid confusion, we refer to Thomas Roman as "Roman" and Angela Roman as "Angela." We intend no disrespect.

heard her screams of "help me," drove toward the sound of screams, and found Angela and Roman, who was holding a child. 1 VRP at 58. Angela told Makein that Roman had bitten and held onto her left arm, punched her several times, and "squeeze[ed]" her neck, causing her to see stars, and that she also had injuries to her chest. 1 VRP at 85. Makein noticed Angela putting her hand near her chest, appearing in distress; he also saw a fresh bite mark on her arm. Makein arrested Roman.

## II. PROCEDURE

The State charged Roman with second-degree assault by strangulation under RCW 9A.36.021(1)(g), with a special domestic violence allegation. At Roman's jury trial, hospital emergency room physician's assistant Gary Bilodeau testified that on September 30, 2012, he had examined Angela and prepared her medical records. Angela said that Roman had bitten her, hit her, thrown her to the ground, and choked her so that she had "[seen] stars." 1 VRP at 40. Angela's physical examination revealed petechia (broken blood vessels) in her cheeks, some redness and swelling on her throat, a bite mark on her left wrist, and bruising in several areas. Bilodeau examined Angela's neck, noticed redness on the front of it, and ordered a CAT[2] scan because Angela complained of difficulty swallowing. The CAT scan results revealed that Angela had a thyroid cartilage fracture and significant soft tissue edema in her neck, injuries consistent with strangulation. Bilodeau also testified that strangulation can cause petechia to the face.

In addition to the facts previously set forth, Officer Makein testified that as he approached the couple, he noted a strong odor of alcohol emanating from Roman. When Makein

---

[2] A CAT scan refers to a computed tomography scan that uses x-ray technology to take multiple cross-sectional views inside the body.

2

"first made contact" with Roman, Roman asked Makein, "[A]re you profiling me because I'm a guy?" and Makein inferred from Roman's conduct that he was not going to cooperate. 1 VRP at 73, 74. Makein advised Roman that he was under arrest for domestic violence assault and read Roman his *Miranda*[3] rights. Roman "clammed up," asked for an attorney, and said he did not want to talk to Makein. 1 VRP at 73. Defense counsel did not object to Officer Makein's testimony about Roman's exercise of his right to remain silent.

After placing Roman in the police car, Makein went back to talk to Angela to continue his investigation and to make sure Angela received medical treatment. Angela repeated her earlier gesture of touching her upper chest and collarbone area, which Makein took as signs of additional injuries. Makein also noticed that Angela began coughing more as the conversation progressed and said, "My throat hurts. I'm having difficulty breathing." 1 VRP at 84. Angela also told Makein that Roman had come up behind her with his arm around her neck and squeezed her neck, causing her to "see . . . stars" and to have problems breathing. 1 VRP at 85.

In addition to the facts previously set forth, Angela testified that when she looked at her bitten hand, she saw really deep teeth marks in it and noticed it was red and swollen. She also realized she could not turn her neck and that it hurt to swallow or to open her mouth. And she had told Makein there was something wrong with her neck and throat. She did not, however, remember telling Makein that she had been choked or strangled. But Angela further testified that the pain in her throat lasted five weeks and it was painful to yawn, to stretch, or turn her neck.

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Roman testified that (1) he had been drinking and was "impaired"[4] at the time of the incident; (2) when Angela tried to grab the car keys from him, he "gave her a stiff arm in the chest. She was approaching [him] as [he] put [his] arm out, so [he] got her pretty good one in the chest with a stiff arm"[5]; (3) as Angela continued trying to grab the keys, he "put [his] mouth on her arm" and bit her, but "didn't break the skin,"[6]; (4) Angela then "knocked [him] off [his] stance,"[7] he started to fall, so he grabbed onto Angela; and (5) he had been holding onto their child the whole time. In response to questions about choking Angela, Roman replied,

> When [Angela] came at me I wasn't looking at her, so I put my arm up like this, I had her shoulder, and I came down and I almost fell. I guess you could consider it at one point kind of a headlock, but I wasn't—you know I was—I was told I had choked her out, and I thought it was like a big time wrestler using two hands to choke someone.

2 VRP at 213. When asked if he had ever had his hands around Angela's neck, Roman replied, "No, I never choked her, punched her, kicked her or kneed her. I didn't do any of those things. I was an ass, but I didn't do those things." 2 VRP at 221.

Defense counsel requested a jury instruction on fourth degree assault. The trial court expressed concern about giving this instruction because Roman was charged with second degree assault by strangulation, not fourth degree assault. 2 VRP at 239. In denying defense counsel's request, the trial court noted:

---

[4] 2 VRP at 169.

[5] 2 VRP at 180.

[6] 2 VRP at 183.

[7] 2 VRP at 184.

But if I give a lesser included of Assault 4, it seems to me that I'm inviting the jury as a compromised verdict to say I'm not convinced beyond a reasonable doubt that the State has proven that he actually strangled her, but there's no question that he actually assaulted her, because he punched her, assuming you believe her, he pushed her down and he did get her in a headlock, and that's the quandary that I have there, so you are in essence by asking for a lesser included. You are inviting the jury to compromise a verdict, where we have this specific charge.

2 VRP at 242. The jury found Roman guilty of second degree assault by strangulation and returned a special verdict of aggravated domestic violence. The trial court sentenced Roman to 6 months in prison with credit for 70 days served. Roman appeals.

## ANALYSIS

### I. LESSER DEGREE OFFENSE INSTRUCTION

Roman argues that the trial court abused its discretion and prejudiced his case when it refused to instruct the jury on the lesser offense of fourth degree assault. Holding that the evidence did not support that Roman committed only fourth degree assault, we disagree.

We review a trial court's refusal to give a lesser included offense instruction for abuse of discretion. *State v. Walker*, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Both the defendant and the State have a statutory right to have supportable inferior degree offenses presented to the jury. *State v. Stevens*, 158 Wn.2d 304, 310, 143 P.3d 817 (2006); *see* RCW 10.61.006, 10.61.003. A defendant is entitled to a jury instruction on an inferior degree offense if "'(1) the statutes for both the charged offense and the proposed inferior degree offense proscribe but one offense; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that

the defendant committed only the inferior offense.'" *State v. Fernandez-Medina*, 141 Wn.2d 448, 454, 6 P.3d 1150 (2000) (internal quotation marks omitted) (quoting *State v. Peterson*, 133 Wn.2d 885, 891, 948 P.2d 381 (1997)).

Here, the parties dispute only the third prong of this test, which is a factual question asking whether the evidence raises an inference and affirmatively establishes the defendant's theory that he committed *only* the inferior degree offense, to the exclusion of the charged offense. *Fernandez-Medina*, 141 Wn.2d at 455. To convict Roman of second degree assault by strangulation[8], the State had to prove beyond a reasonable doubt that Roman assaulted Angela by strangulation, under circumstances not amounting to first degree assault. RCW 9A.36.021(g). "Strangulation" means to compress a person's neck, thereby obstructing the person's blood flow or ability to breathe, or doing so with the intent to obstruct the person's blood flow or ability to breathe. RCW 9A.04.110(26). In contrast, fourth degree assault, a gross misdemeanor, is an assault *not amounting to* first degree, second degree, third degree, or custodial assault. RCW 9A.36.041.

Here, the overwhelming evidence of Roman's strangulation of Angela and her resulting injuries does not support Roman's theory that he committed *only* the inferior degree offense of fourth degree assault. *Fernandez-Medina*, 141 Wn.2d at 455. On the contrary, the evidence supports the jury's finding Roman guilty of second degree assault by strangulation: (1) At the crime scene, Angela had told Makein that Roman had "com[e] behind her with his arm around

---

[8] RCW 9A.36.021 provides, in pertinent part:
> (1) *A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:* . . .
> (g) *Assaults another by strangulation or suffocation.*
(Emphasis added.)

her neck and squeeze[ed] her neck," 1 VRP at 85, and Makein had noticed signs of strangulation, including her incessant coughing and her complaints about difficulty breathing and throat pains; (2) at the hospital soon thereafter, Angela had also told hospital physician's assistant, Bilodeau, that Roman had choked her; (3) Bilodeau's examination of Angela had revealed redness on the front of her neck and petechia on her cheeks, which had likely been caused by strangulation; (4) Bilodeau had ordered a CAT scan, which showed that Angela had a thyroid cartilage fracture and substantial soft tissue edema in her neck, injuries consistent with strangulation; (5) Angela had testified about the pain in her throat that had lasted five weeks after the incident and that it had been painful to yawn, to stretch, or to turn her neck; and (6) Roman had admitted at trial that "at one point" he had Angela in "kind of a headlock." 2 VRP at 213.

The evidence did not support that Roman committed only simple fourth degree assault, which could not have encompassed the severe injuries that Angela suffered here from Roman's squeezing her neck or headlock, both synonymous with strangulation under the facts of this case. See RCW 9A.36.041. We hold, therefore, that the trial court did not abuse its discretion in concluding that the evidence did not support an inferior degree instruction and in refusing Roman's requested instruction.

## II. COMMENT ON SILENCE

Roman next argues that Makein's testimony about Roman's silence at the scene and about Roman's pre-arrest and post-arrest statements violated his constitutional right to remain silent. The State counters that (1) Makein's testimony was not a comment on Roman's exercise of his right to silence; and (2) even if it were such a comment, it was harmless error. Assuming, without deciding, that Makein's testimony was an impermissible comment on Roman's exercise

of his constitutional right to remain silent, we hold that any such error was harmless beyond a reasonable doubt.

The State bears the burden of showing that a constitutional error was harmless beyond a reasonable doubt. *State v. Easter*, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996); *State v. Pottorff*, 138 Wn. App 343, 347, 156 P.3d 955 (2007). We will find constitutional error harmless if we are convinced beyond a reasonable doubt that any reasonable jury would have reached the same result absent the error, and where the untainted evidence is so overwhelming it necessarily leads to a finding of guilt. *Easter*, 130 Wn.2d at 242. Such is the case here.

Roman challenges the following testimony about his pre-arrest and post-arrest silence and statements:

> [STATE:] Now, you didn't have him do any of those [sobriety tests], did you?
> [OFFICER MAKEIN:] No sir. Once he was—I advised him he's under arrest for domestic violence assault, I read him [*Miranda*]. He clammed up, said I want my attorney. I don't want to talk to you, so for me once he says anything like that after I read [*Miranda*] I don't ask him anything else.
> [STATE:] Describe for me when you first made contact with him how is his demeanor?
> [OFFICER MAKEIN:] I would have to say defiant, probably the best word because after he made the statement, are you profiling me because I'm a guy? I tried to explain to him, no. I'm just making sure everybody is safe, making sure I'm safe, but for him once he made that statement it was clear that he wasn't going to cooperate. He wasn't going to really do anything to assist with the investigation or provide information that we need. His demeanor was basically I was pissing him off, because I determined it was a crime that occurred against his wife and put him in custody.
> . . . .
> [STATE:] After the defendant is taken into custody, what did you do?
> [OFFICER MAKEIN:] Of course pat him down for weapons, put him in the backseat of my car, read him [*Miranda*]. He doesn't want to talk, so I left him in the car, continued my investigation to make sure that the victim gets medical treatment, have her evaluated and that's what I did.

1 VRP at 73-75.

8

Absent Makein's comments, the jury would still have reached the same verdict, finding Roman guilty of second degree assault by strangulation. First, despite denying having "choke[d]" Angela, Roman admitted to the jury at trial that he had her in "kind of a headlock" "at one point." 2 VRP at 213. Second, the undisputed evidence about the nature and severity of Angela's injuries from Roman's headlock included Bilodeau's testimony about redness on the front of her neck and throat, petechia on Angela's cheeks that was likely caused by strangulation, the CAT scan results showing Angela's thyroid cartilage fracture and substantial soft tissue edema in her neck (symptoms also consistent with strangulation), and Angela's report to Bilodeau that Roman "choked" her. 1 VRP at 39. Also undisputed was Makein's testimony that Angela had coughed incessantly when he spoke with her, that she had difficulty breathing, and that she told him Roman had "squeeze[ed]" her neck. 1 VRP at 85. Angela testified that she had pain in her throat that had lasted five weeks after the incident and that it was painful to yawn, to stretch, or to turn her neck.

The overwhelming uncontroverted evidence about Angela's cheek petechia, neck and throat injuries, and breathing difficulties was consistent with strangulation. Angela attributed these injuries to Roman's having "squeez[ed]"[9] her neck; and even Roman himself admitted to having had her in "kind of a headlock." 2 VRP at 213. Based on this evidence, a reasonable jury would have convicted Roman of second degree assault by strangulation even absent Makein's testimony about Roman's silence. Accordingly, we hold that any error was harmless beyond a reasonable doubt and, thus, does not warrant reversal of Roman's conviction.

---

[9] 1 VRP at 85.

## III. EFFECTIVE ASSISTANCE OF COUNSEL

Roman last argues that his trial counsel rendered ineffective assistance in failing to object to Makein's comment on his (Roman's) right to remain silent. This argument also fails.

To prevail on an ineffective assistance of counsel claim, a defendant must show both deficient performance and resulting prejudice; failure to show either prong defeats such claim. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). To establish prejudice, a defendant must show that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). For the same reasons that we hold Makein's comments about Roman's silence to have been harmless error, we also hold that Roman does not show that his counsel's failure to object to this testimony prejudiced him. Thus, Roman's ineffective assistance challenge fails on this second prong alone, and we need not address the deficient performance prong of the test.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, P. J.

We concur:

Worswick, J.

Melnick, J.