FILED
COURT OF APPEALS
DIVISION II

2014 SEP 30 AM 9: 07

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44596-4-II |
| Respondent, | |
| v. | |
| GREG LEE HALE, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — Greg Lee Hale appeals his jury trial conviction for reckless endangerment and his sentences for the reckless endangerment and unlawful possession of a controlled substance convictions.[1] He argues that (1) the evidence was insufficient to prove the reckless endangerment charge, (2) the trial court erred in including a second degree assault conviction in his criminal history when he stipulated only to a prior conspiracy to commit second degree assault conviction, (3) his 8-point offender score was incorrect, (4) the trial court abused its discretion when it failed to consider whether his three 2010 offenses were same criminal conduct, and (5) his trial counsel was ineffective for failing to argue that the 2010 offenses were same criminal conduct. We affirm the conviction and sentences but remand for the trial court to

---

[1] Hale does not challenge his conviction for unlawful possession of a controlled substance (methamphetamine).

correct the judgment and sentence to reflect that the second degree assault conviction in Hale's criminal history was a conspiracy offense rather than a completed crime.

FACTS

I. BACKGROUND

On August 21, 2012, Bremerton Police Department Officer Lawrence Green was on patrol when he noticed Hale walking down the sidewalk with a small child.[2] Aware that there was an active arrest warrant for Hale, Officer Green pulled his patrol car into the street in front of Hale, got out of the car, and approached Hale. At this point, Officer Green had a stun gun in his hand, but he kept the stun gun out of Hale's sight.

When Officer Green called out Hale's name and told him that there was a warrant for his arrest, Hale responded, "[']No that's not me. You know, at least let me get my wife.[']" Report of Proceedings (RP) (Feb. 12, 2013) at 46. When Officer Green instructed Hale to turn around and put his hands behind his back, Hale did not comply. Instead, he picked up the child and attempted to walk past Green.

Officer Green told Hale that he would "give [the] child to [Hale's] wife." When Hale continued to attempt to walk past him, Officer Green displayed the stun gun at this side and told Hale that he was not free to leave. According to Officer Green, "[a]t that point, [Hale] became excited, and he was desperate to leave." RP (Feb. 12, 2013) at 49. When Hale continued to try to walk past him, Officer Green reiterated that Hale was not free to leave and directed him to "[p]ut the child down." RP (Feb. 12, 2013) at 49. Hale had moved the child into his left arm, positioning the child between him and the officer. It appeared to Officer Green that Hale "was using the child

---

[2] The child was 22 months old.

as a shield," and "that his intent was to use the child to try to protect himself to try to . . . flee the situation." RP (Feb. 12, 2013) at 49.

When Hale still continued to try to walk past him, Officer Green pinned him against the rock wall bordering the sidewalk. Officer Green simultaneously pinned the child against Hale with his forearm. Hale then reached into his pocket with his free hand. Concerned that Hale was reaching for a weapon, Officer Green ordered Hale to show his hands. When Hale did not comply, Officer Green shot the stun gun's "probes" into the rock wall behind Hale and then used the stun gun in a manner that allowed him to apply the "stun" directly to Hale's shoulder. The child did not appear to be affected by the stun gun.

While he was stunning Hale, Officer Green saw Hale remove a "methamphetamine pipe" from his pocket and attempt to crush it. RP (Feb. 12, 2013) at 51. Hale then started to "slump down," and Officer Green grabbed the child and placed her on the ground, where she sat without crying. RP (Feb. 12, 2013) at 51. He then pinned Hale to the ground and put him in restraints. The child's mother arrived, and Officer Green allowed her to take the child. During a search incident to arrest, another officer discovered methamphetamine on Hale's person.

## II. PROCEDURE

The State charged Hale with unlawful possession of a controlled substance (methamphetamine)[3] and reckless endangerment.[4] The case went to a jury trial.

---

[3] RCW 69.50.4013(1).

[4] RCW 9A.36.050(1).

A. OFFICER GREEN'S TESTIMONY

During trial, Officer Green testified to the facts as set out above.[5] He also testified that the stun gun was a "very safe tool," that it could be "applied to . . . small children, pregnant women," that he had not seen any "incident where a [stun gun] has caused any harm to someone, other than the actual contracture of their muscles." RP (Feb. 12, 2013) at 52-53. Additionally, Officer Green also testified that although he also carried an expandable baton and a firearm, he chose to use the stun gun against Hale rather than his other weapons to lessen the risk of putting the child in danger. On cross-examination, he agreed that he was "not going to place that child in danger of death or any kind of serious physical injury." RP (Feb. 12, 2013) at 69. He also agreed that this is what one would expect from any police officer in a similar situation.

But on redirect, when the State asked him if Hale's behavior "put the child in danger" or created an "unsafe situation," Officer Green responded, "Without question." RP (Feb. 12, 2013) at 70. Officer Green testified that when Hale refused to stay where he was and then picked the child up and appeared to be using the child as a shield, Hale was attempting to use the child to protect himself. Officer Green further stated that Hale's behavior created an unsafe situation because he (Officer Green) did not know if Hale was armed and when people are attempting to flee there is always a possibility they will use any means possible.

Additionally, when the State asked Officer Green whether, despite the fact he was able to use the stun gun, the child was "still in an unsafe situation," the officer stated, "Absolutely." RP (Feb. 12, 2013) at 71. He stated that if Hale had escalated the situation, "[t]he child could have been killed." RP (Feb. 12, 2013) at 71. He further testified that by using the child as a shield and

---

[5] Hale did not testify.

4

refusing "to surrender and continuing to try to flee the scene," Hale put the child at risk given that he (Officer Green) was armed and had no way of knowing whether Hale was armed. RP (Feb. 12, 2013) at 74-75. The jury found Hale guilty of reckless endangerment and unlawful possession of a controlled substance.

B. SENTENCING

At sentencing, Hale stipulated to the following criminal history:

1. Residential burglary (committed August 14, 2010),
2. Second degree possession of stolen property (committed August 14, 2010),
3. Second degree theft (committed August 14, 2010),
4. Conspiracy to commit second degree assault,
5. Forgery,
6. Second degree theft, and
7. A drug offense.

The stipulation also stated that Hale was "[o]n community custody/prison-based [drug offender sentencing alternative]" when he committed the current offenses. Clerk's Papers (CP) at 52. The stipulation did not include an offender score. Nor did it state whether any of the 2010 offenses were same criminal conduct or whether Hale served concurrent or consecutive sentences for these convictions.

The sentencing court sentenced Hale based on an 8-point offender score: 1 point for each of the seven prior offenses and an additional point because he had committed the current offenses while on community custody. But the judgment and sentence lists Hale's prior conspiracy to commit second degree assault as a completed second degree assault. Hale appeals his reckless endangerment conviction and his sentences.

DISCUSSION

Hale argues that the evidence was insufficient to prove the reckless endangerment charge, challenges his offender score, and claims ineffective assistance of counsel related to one of his

5

offender score arguments. Although Hale establishes a minor clerical error in regard to his sentencing, his arguments otherwise fail.

## I. SUFFICIENT EVIDENCE OF RECKLESS ENDANGERMENT

Hale first contends that the evidence was insufficient to prove reckless endangerment. He argues that his actions were not reckless and did not create a substantial risk of death or serious injury, primarily because Officer Green confirmed during his testimony that neither he nor any other officer was "'going to do anything . . . that would have placed this child in danger.'" Br. of Appellant at 6 (alteration in original) (quoting RP (Feb. 12, 2013) at 69). We disagree with Hale.

We review claims of insufficient evidence to determine whether, "after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We draw all reasonable inferences from the evidence in favor of the State and against the defendant. *Salinas*, 119 Wn.2d at 201.

To prove reckless endangerment, the State had to prove that Hale recklessly engaged in conduct that created a substantial risk of death or serious physical injury to the child. RCW 9A.36.050(1). "A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and his or her disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation." RCW 9A.08.010(1)(c).

Hale's argument that Officer Green's testimony that neither he nor any other officer was "going to do anything . . . that would have placed this child into danger" (RP (Feb. 12, 2013) at 69) established that Hale did not do anything that created a substantial risk of death or serious physical injury to the child ignores that Hale, rather than the officer, was the one who placed the

child in potential danger. A reasonable person would understand that failing to stop when ordered to do so by an armed police officer who was trying to arrest him or her, physically struggling with the officer, and then attempting to take something out of his or her pocket—all while holding a small child in a way that attempted to use the child as a shield—could create a risk of serious physical injury to the child. The armed officer could not assume that Hale was not reaching for a weapon, and the situation could easily have escalated if Hale had not responded to the stun gun application the way he did. In fact, Officer Green testified that Hale's behavior created an unsafe situation for the child and that Hale's behavior created a risk that "[t]he child could have been killed." RP (Feb. 12, 2013) at 71.

That Officer Green handled the situation without harming the child does not mean Hale's actions did not create a substantial *risk* of serious injury to the child. Even though Officer Green was ultimately able to control the situation without additional struggle or the use of more dangerous weapons, there was still the risk that the situation could have escalated had Hale reacted differently. If the situation had escalated and Officer Green was required to use greater force against Hale, the fact that Hale was using the child as a shield certainly created a risk that the child could be seriously injured by the officer. For instance, if the situation had escalated, Hale could have dropped the child, and a fall could have resulted in serious injury to the child. Taking the evidence in the light most favorable to the State, a reasonable jury could find that Hale created a substantial risk of serious injury to the child, that a reasonable person would apprehend and avoid this risk, and that using a child as a shield against an armed officer was a gross deviation from reasonable conduct. Accordingly, this argument fails.

7

## II. SENTENCING

Hale next contends that (1) the trial court erred in including a second degree assault conviction in his criminal history when he stipulated only to a conspiracy to commit second degree assault conviction, (2) his 8-point offender score was incorrect because he had only seven prior convictions, (3) the trial court abused its discretion by failing to consider whether the three 2010 convictions were same criminal conduct, and (4) his trial counsel was ineffective for failing to argue that the 2010 offenses were same criminal conduct. Hale establishes that the judgment and sentence contains a minor clerical error, but these arguments otherwise fail.

### A. PRIOR SECOND DEGREE ASSAULT

Hale argues that the State failed to prove the existence of the prior second degree assault conviction that the trial court included in his offender score when he stipulated only to a conspiracy to commit second degree assault charge and there was no additional proof of a second degree assault conviction. The State acknowledges that the stipulation noted that the second degree assault was a conspiracy offense. But it argues that the inclusion of a second degree assault rather than a conspiracy to commit second degree assault prior conviction on the judgment and sentence is merely a clerical error. The State further notes that this error is irrelevant to Hale's sentence because second degree assault and conspiracy to commit second degree assault are scored the same since they are both felony offenses. The State is correct.

When sentencing a defendant, the sentencing court "may rely on the defendant's stipulation or acknowledgment of prior convictions to calculate the offender score." *State v. James*, 138 Wn. App. 628, 643, 158 P.3d 102 (2007), *review denied*, 163 Wn.2d 1013 (2008). Here, Hale stipulated that he had a prior conspiracy to commit second degree assault conviction. Hale is correct that the judgment and sentence incorrectly states that he had a prior second degree assault conviction rather

8

than listing this prior offense as a conspiracy offense. But this error appears to be a clerical error, and it does not affect Hale's offender score calculation because the completed offense and the conspiracy offense are scored the same. RCW 9.94A.525(4) ("Score prior convictions for felony anticipatory offenses (attempts, criminal solicitations, and criminal conspiracies) the same as if they were convictions for completed offenses."). Although Hale fails to show that his offender score is incorrect on this basis, we must remand this case for the trial court to correct this clerical error in the judgment and sentence.

### B. TOTAL OFFENDER SCORE

In two footnotes, Hale appears to argue that his 8-point offender score is incorrect because he had only seven prior offenses. Hale fails to recognize that he received an extra point because he stipulated that he was on community custody at the time he committed the current offenses. RCW 9.94A.525(19) ("If the present conviction is for an offense committed while the offender was under community custody, add one point."). Thus, the 8-point offender score was correct.

### C. 2010 OFFENSES

Hale next argues that (1) the trial court abused its discretion when it failed to consider whether his three 2010 offenses were same criminal conduct, and (2) his trial counsel provided ineffective assistance of counsel by failing to argue that the 2010 convictions were same criminal conduct. These arguments fail.

#### 1. SAME CRIMINAL CONDUCT

Hale argues that RCW 9.94A.525(5)(a) required the trial court to determine whether the 2010 offenses were same criminal conduct and that the court abused its discretion in failing to make this determination. We disagree.

RCW 9.94A.525(5)(a) provides,

In the case of multiple prior convictions, for the purpose of computing the offender score, count all convictions separately, except:

(i) Prior offenses which were found, under RCW 9.94A.589(1)(a), to encompass the same criminal conduct, shall be counted as one offense, the offense that yields the highest offender score. The current sentencing court shall determine with respect to other prior adult offenses for which sentences were served concurrently or prior juvenile offenses for which sentences were served consecutively, whether those offenses shall be counted as one offense or as separate offenses using the "same criminal conduct" analysis found in RCW 9.94A.589(1)(a), and if the court finds that they shall be counted as one offense, then the offense that yields the highest offender score shall be used. The current sentencing court may presume that such other prior offenses were not the same criminal conduct from sentences imposed on separate dates, or in separate counties or jurisdictions, or in separate complaints, indictments, or informations.

Under this statute, the trial court is required to (1) count all prior offenses that had previously been found to be the same criminal conduct as one offense, and (2) make a same criminal conduct determination if the sentences for the prior offenses were concurrent. RCW 9.94A.525(5)(a). Nothing in the record shows that the 2010 convictions were previously found to be same criminal conduct or that Hale was sentenced to concurrent sentences for those crimes. Thus, even presuming, but not deciding, that Hale preserved this argument, he fails to establish on the record before us that the trial court was *required* to consider whether these offenses were same criminal conduct. Accordingly, this argument fails.

Furthermore, to the extent Hale is also arguing that these offenses were same criminal conduct, the record fails to support that argument. To be same criminal conduct, the offenses must have the same criminal intent, be committed at the same time and place, and involve the same victim. RCW 9.94A.589(1)(a). None of this information is in the record.

## 2. NO INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Hale argues that his trial counsel provided ineffective assistance when he failed to argue that the 2010 offenses were same criminal conduct. This argument also fails.

To prevail on an ineffective assistance of counsel claim, Hale must show both deficient performance and resulting prejudice; failure to show either prong defeats this claim. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). We review ineffective assistance claims de novo, beginning with a strong presumption that trial counsel's performance was adequate and reasonable and giving exceptional deference when evaluating counsel's strategic decisions. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To establish prejudice, Hale must show that but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34. Hale fails to meet this burden.

Whether multiple offenses are same criminal conduct is, in part, a factual determination. *State v. Nitsch*, 100 Wn. App. 512, 523, 997 P.2d 1000, *review denied*, 141 Wn.2d 1030 (2000). Again, because the record contains no information about the 2010 convictions, Hale fails to establish that the trial court would have determined that these offenses were same criminal conduct. Accordingly, he does not establish prejudice and this argument fails.

No. 44596-4-II

We affirm the conviction and sentences but remand for the trial court to correct the judgment and sentence to reflect that the second degree assault offense in Hale's criminal history was for *conspiracy to commit* second degree assault.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

BJORGEN, J.

MELNICK, J.