FILED
COURT OF APPEALS
DIVISION II

2015 FEB 24  AM 9: 30

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45109-3-II |
| Respondent, | |
| v. | |
| TYRONE MANSON ST. OURS, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — Tyrone Manson St. Ours appeals his jury trial conviction for unlawful possession of a controlled substance (heroin).[1]  He argues that (1) the admission of testimony related to evidence that was not preserved violated due process, (2) his trial counsel was ineffective for failing to move to dismiss the charges based on this alleged due process violation, (3) the trial court erred in admitting certain evidence because it was irrelevant and unfairly prejudicial, and (4) the prosecutor committed misconduct in closing argument by stating that the arresting officer believed that the heroin and the backpack containing the heroin belonged to St. Ours and by arguing facts not in evidence.  Although we reject St. Ours's other arguments, we agree that the

---

[1] RCW 69.50.4013(1).

prosecutor committed prejudicial misconduct in closing argument by arguing facts not in evidence. Accordingly, we reverse St. Ours's conviction and remand for further proceedings.

## FACTS

### I. BACKGROUND

On March 22, 2013, Officer Jeff Thiry and his partner were on patrol in downtown Tacoma when Officer Thiry saw St. Ours walking with another man. Officer Thiry recognized St. Ours and stopped him because of an outstanding arrest warrant. Officer Thiry told St. Ours to remove the backpack he was wearing and then handcuffed him.

After securing St. Ours, Officer Thiry searched the backpack and found "numerous hypodermic syringes and some other paraphernalia."[2] Report of Proceedings (RP) (July 9, 2013) at 70. One of the syringes contained a dark brown liquid that Officer Thiry believed was black tar heroin. Because of potential safety issues, he put the syringes in "a department-issued sharps container." RP (July 9, 2013) at 70.

In the same part of the backpack, Officer Thiry found a "little tin cup" that contained a clump of a brown tar-like substance. RP (July 9, 2013) at 73. He field tested the tarry substance, and it tested positive for heroin. Officer Thiry arrested St. Ours for possession of a controlled substance.

After removing the syringes and the tin cup containing the brown substance from the backpack and ensuring that it did not contain any weapons, Officer Thiry handed the backpack to the other man.[3] According to Officer Thiry, he did so at St. Ours's request.

---

[2] There were approximately 40 syringes in the backpack.

[3] Officer Thiry never identified the second man.

2

## II. PROCEDURE

The State charged St. Ours with unlawful possession of a controlled substance (heroin) and unlawful use of drug paraphernalia.[4] The case proceeded to a jury trial.

### A. PRELIMINARY MOTIONS

Before trial, the State moved to dismiss the unlawful use of drug paraphernalia charge because it had discovered that the alleged drug paraphernalia was not available and had likely been destroyed. The trial court granted this motion and dismissed this charge.

The trial court then asked the State if it still intended to offer evidence of the alleged drug paraphernalia on the remaining charge. The State responded that despite not having the syringes or any photographs of the syringes, it intended to ask Officer Thiry to testify about what he had found in the backpack and "how heroin is commonly used." RP (July 8, 2013) at 8. The State asserted that this evidence was relevant to prove that St. Ours possessed the heroin, stating, "I think it's relevant he had syringes on his person indicating he intended to use it as well." RP (July 8, 2013) at 8. The State also intended to offer evidence about the tin cup and to have Officer Thiry testify that it was used as a heroin cooker and what a heroin cooker was.

Defense counsel argued that allowing the State to present any evidence about items found in the backpack would be unfairly prejudicial because (1) the defense had not been able to examine the syringes to determine if they were insulin syringes, noting that St. Ours could be a diabetic, and (2) the defense had not been able to examine the backpack for evidence that it belonged to someone other than St. Ours. Apparently rejecting St. Ours's arguments, the trial court responded

---

[4] RCW 69.50.412(1).

that it was more concerned with whether the evidence was prejudicial than with Officer Thiry's failure to retain the backpack or syringes and suggested that the officer's failure to retain these items was something that St. Ours could argue to the jury. Although the trial court asked defense counsel if he thought this evidence was admissible under ER 404(b), defense counsel continued to argue that the evidence should not be admitted because the defense would be prejudiced by its inability to examine this evidence. He never asserted that this evidence was not relevant or that it was unfairly prejudicial in and of itself.

The next day, the trial court admitted evidence of the syringes under ER 404(b), stating that the syringes were relevant to prove St. Ours knowingly possessed the heroin and that the possible prejudice did not outweigh the probative value of this evidence. The trial court also commented, "[T]hat the defense is free to cross-examine about what Officer Thiry did with the syringes and what he did not do with them, what he might have done as part of a thorough police investigation." RP (July 9, 2013) at 55. The trial court did not mention the backpack.

## B. Trial Testimony

Officer Thiry testified to the facts described above.[5] In addition, on cross-examination, he testified that he had searched the backpack for weapons and that the backpack did not contain any documents, wallet, identification, papers, mail, or bills linking the backpack to St. Ours. Neither the State nor St. Ours asked Officer Thiry if the backpack contained anything other than the

---

[5] The State's only other witness was a Washington State Patrol Crime Lab forensic scientist who testified that the substance from the tin cup contained heroin.

syringes and the tin cup containing the heroin or whether the backpack contained anything that could have shown that it belonged to another person.[6]

St. Ours asserted an unwitting possession defense. He testified that he did not know what was in the backpack because it did not belong to him and he had not looked inside it.[7] He stated that just before Officer Thiry stopped him, he (St. Ours) had met a man he knew as "Herbert," whose last name he did not know, and that Herbert had asked him to carry the backpack for him. RP (July 10, 2013) at 106. St. Ours planned to meet Herbert later and return the backpack. St. Ours admitted that he was carrying the backpack when Officer Thiry stopped him, but he denied asking Officer Thiry to give the backpack to the man he was with.

## C. CLOSING ARGUMENTS

In its closing argument, the State argued that it had proven that St. Ours had knowingly possessed the heroin because the heroin was in the backpack, St. Ours was wearing the backpack, and there was "no other claim of ownership from any other party that is in evidence in this case." RP (July 10, 2013) at 121. The State also argued, "Additionally, there is no evidence that anyone else had access to that backpack." RP (July 10, 2013) at 122.

In his closing argument, St. Ours argued that the State's failure to retain the backpack was "sloppy, shotty [sic], police work," and that the failure to keep the backpack had deprived him of

---

[6] After the State rested, St. Ours moved to suppress the evidence from the backpack, arguing that the search was an invalid search incident to arrest. The trial court denied the motion to suppress based on Officer Thiry's trial testimony. This motion did not address Officer Thiry's failure to retain the backpack or its contents.

[7] St. Ours was the only defense witness.

his ability to support his defense because he could not examine it to see if it had contained anything identifying it as another person's backpack. RP (July 10, 2013) at 123. St. Ours further argued,

> [Officer Thiry] didn't see anything in [the backpack] linking it to Mr. St. Ours. There was no wallet, there was no mail, no documents, nothing in there linking it to Mr. St. Ours. *What about Herbert? He didn't tell you about that.*
> Oh, and [the State] has just told you that nobody came forward with a claim of ownership to that backpack. Well, of course not. It's gone. How can the State argue to you that because nobody has come forward to claim a backpack that the State let go, all of a sudden this is now proof that was Mr. St. Ours' backpack. That doesn't make sense. Don't buy it.

RP (July 10, 2013) at 124 (emphasis added). St. Ours also asserted that other than the fact he had been carrying the backpack, the State had not offered any evidence proving that the backpack belonged to him and argued that this was sufficient to prove his unwitting possession defense by a preponderance of the evidence.

In rebuttal, the State responded that the fact St. Ours was carrying the backpack "link[ed]" it to him. RP (July 10, 2013) at 127. It further argued,

> You heard testimony from Officer Thiry when he was asked, you know, what other items were in it. *There really wasn't anything else in it.* There was nothing that had a bill in Mr. St. Ours' name. Pretty clear that's not there, otherwise I could have been talking about it with you earlier. You know what? *There was also nothing else in it with Herbert's name.* Herbert, who doesn't have a last name.

RP (July 10, 2013) at 128 (emphasis added). St. Ours objected, asserting that the State was arguing facts not in evidence.

6

The trial court overruled the objection. Rather than refer the jury to the standard instruction stating that counsels' argument was not evidence,[8] the court stated, "I think it's arguing the evidence before the jury." RP (July 10, 2013) at 128.

The prosecutor further argued,

> Additionally, the defendant also seems to want you to believe that the officer just simply gave the backpack away without any sort of conversation, discourse, or discussion with him. Well, that doesn't really make a lot of sense. *If the officer didn't believe that it was the defendant's backpack,* then all of a sudden he has a piece of abandoned property. If it's a piece of abandoned property, there is no real reason to attribute the controlled substances to the defendant.
> *But, clearly, that wasn't the officer's thought process because he told you he believed they were the defendant's.* They were in the backpack the defendant was carrying on his back. And he ultimately, not only executed the warrant, but he also advised the defendant, hey, man, you are under arrest for these drugs I found in your backpack.

RP (July 10, 2013) at 128-29 (emphasis added). St. Ours did not object to this argument.

The jury found St. Ours guilty of unlawful possession of a controlled substance (heroin). St. Ours appeals.

## DISCUSSION

St. Ours argues that (1) the admission of the evidence related to the syringes and backpack violated his due process rights, (2) his trial counsel was ineffective for failing to move to dismiss all charges based on this alleged due process violation, (3) the trial court erred in admitting

---

[8] Jury instruction 1 provided in part,

> The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. . . . You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

Clerk's Papers at 45.

evidence related to the backpack and syringes because it was irrelevant and unfairly prejudicial, (4) the prosecutor committed misconduct in closing argument by telling the jury that Officer Thiry testified that he believed the backpack and the drugs belonged to St. Ours, and (5) the prosecutor committed misconduct in closing argument when she argued facts not in the evidence by stating that the backpack did not contain any evidence linking it to Herbert. Although we reject St. Ours's other arguments, we agree that the prosecutor committed prejudicial misconduct when it argued that the backpack did not contain any evidence suggesting it belonged Herbert.

## I. No Due Process Violation

St. Ours first argues that the failure to preserve the syringes and the backpack violated his due process rights and impaired his ability to present an effective defense.[9] He contends that Officer Thiry had a duty, independent of any request by St. Ours, to preserve this evidence for the defense because the evidence was materially exculpatory and was of such nature that there was no reasonable means by which St. Ours could obtain comparable evidence. St. Ours further contends that even if this evidence was not materially exculpatory, it was potentially useful, and the State violated his due process rights by failing to preserve the evidence in bad faith. Even presuming that St. Ours preserved this issue for review, this argument fails.

### A. Standard of Review and Due Process

"We review alleged due process violations de novo." *State v. Mullen*, 171 Wn.2d 881, 893-94, 259 P.3d 158 (2011) (citing *State v. Cantu*, 156 Wn.2d 819, 831, 132 P.3d 725 (2005)). The Fourteenth Amendment of the United States Constitution and article I, section 3 of the

---

[9] Although we reverse on other grounds, we address this argument because we would likely dismiss the charges if this argument had been successful. *See State v. Wittenbarger*, 124 Wn.2d 467, 475, 880 P.2d 517 (1994).

Washington Constitution require the State to preserve material exculpatory evidence in a criminal trial. *See State v. Wittenbarger*, 124 Wn.2d 467, 474-75, 880 P.2d 517 (1994) (citing *California v. Trombetta*, 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984)). Material exculpatory evidence is evidence that, before its destruction or release, has apparent exculpatory value and is of "a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Wittenbarger*, 124 Wn.2d at 475 (citing *Trombetta*, 467 U.S. at 489). But a showing that the evidence *might* have exonerated the defendant is insufficient to establish that it is material exculpatory evidence. *Wittenbarger*, 124 Wn.2d at 475.

If the State fails to preserve *potentially* useful evidence that does not qualify as material exculpatory evidence, the State has not violated the defendant's right to due process unless the defendant can show that the State acted in bad faith. *Wittenbarger*, 124 Wn.2d at 477 (citing *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988)). "'Potentially useful' evidence is 'evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.'" *State v. Groth*, 163 Wn. App. 548, 557, 261 P.3d 183 (2011) (quoting *Youngblood*, 488 U.S. at 57; *Wittenbarger*, 124 Wn.2d at 477), *review denied*, 173 Wn.2d 1026 (2012).

### B. EVIDENCE NOT MATERIAL EXCULPATORY EVIDENCE

Our review of the record does not suggest that the syringes or the backpack had an exculpatory value that was apparent before they were destroyed or released. As to the syringes, at best, defense counsel suggested that the syringes could have been used by a diabetic. But the defense never presented any evidence that St. Ours, or the person he asserted owned the backpack, was a diabetic; defense counsel merely asserted that St. Ours could be a diabetic. Defense counsel

also asserted that the brown liquid in the syringe could have been something other than heroin, but that merely shows that the evidence was potentially useful if it had been tested and found to have been something other than heroin.

As to the backpack, defense counsel merely asserted that the backpack could have contained other items linking it to someone other than St. Ours. At best, St. Ours has shown that the evidence *might* have exonerated him, and this is insufficient to establish that the evidence was material exculpatory evidence. Additionally, there were other possible ways St. Ours could have established that the backpack belonged to someone else—the alleged true owner or someone who saw the alleged owner give St. Ours the backpack could have testified. Accordingly, St. Ours has failed to establish that the State violated his due process rights by failing to retain material exculpatory evidence.

## C. NO EVIDENCE OF BAD FAITH

Furthermore, even if the syringes and the backpack were potentially useful evidence, St. Ours did not present any evidence suggesting that the State acted in bad faith by failing to retain the backpack or the syringes. As to the syringes, there was no evidence establishing why the syringes were not available, establishing that the party responsible for the syringes being unavailable was aware of any exculpatory aspect of this evidence, or establishing that the syringes were unavailable because someone failed to follow any policy or protocol. *See Groth*, 163 Wn. App. at 559-60 (considering the fact there was no evidence that evidence was destroyed in violation of established policy and procedures when evaluating whether the destruction was in bad faith).

As to the backpack, the trial testimony established only that Officer Thiry gave the backpack to the man who was with St. Ours, and there was no evidence that Officer Thiry did so

10

with intent to make this item unavailable to the defense. Moreover, "[t]he presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 56 n.\*. And there is nothing in the record suggesting that Officer Thiry had any knowledge that St. Ours would later assert that the backpack belonged to another person. Accordingly, based on this record, St. Ours does not show that his due process rights were violated.

## II. NO INEFFECTIVE ASSISTANCE OF COUNSEL

St. Ours further argues that his trial counsel's representation was ineffective because he failed to argue that the State had violated St. Ours's due process rights in failing to preserve the syringes and the backpack. This argument also fails.

We review an ineffective assistance claim de novo, beginning with a strong presumption that trial counsel's performance was adequate and reasonable. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To prevail on an ineffective assistance of counsel claim, the appellant must show both deficient performance and resulting prejudice; failure to show either prong defeats this claim. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002).

To show prejudice here, St. Ours must establish that there was a reasonable probability that the trial court would have found that St. Ours's due process rights had been violated. *State v. McFarland*, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995). As discussed above, based on the evidence before us, St. Ours does not show that a due process argument would have been successful. Thus, he fails to show prejudice on this record, and his ineffective assistance of counsel argument fails.

### III. EVIDENTIARY ISSUE

St. Ours next argues that the trial court erred in admitting the backpack and syringe evidence because it was irrelevant and unfairly prejudicial. He has failed to preserve this error.

A prerequisite for challenging an evidentiary ruling is that the appellant must have made a timely and specific objection at trial. ER 103(a)(1); RAP 2.5; *State v. Gray*, 134 Wn. App. 547, 557, 138 P.3d 1123 (2006), *review denied*, 160 Wn.2d 1008 (2007). Here, St. Ours argued only that this evidence was inadmissible because it was unfairly prejudicial in light of the fact the State had not retained the evidence—St. Ours did not object to the trial court's ER 404(b) analysis and its related prejudice analysis. Accordingly, to the extent St. Ours is arguing that this evidence was unfairly prejudicial in its own right, he has failed to preserve this argument, and we do not address it further.

### IV. PROSECUTORIAL MISCONDUCT

Finally, St. Ours argues that the prosecutor committed misconduct during closing argument (1) by stating that Officer Thiry testified that he believed the backpack and drugs belonged to St. Ours and (2) by arguing facts not in evidence when she stated that the backpack did not contain any evidence linking it to Herbert. Although St. Ours failed to preserve his first argument, we agree that the prosecutor argued facts not in evidence when she stated that the backpack did not contain any evidence linking it to Herbert. Furthermore, in light of St. Ours's unwitting possession defense and the trial court's comment on this argument, we hold that this error was prejudicial.

#### A. STANDARD OF REVIEW

To establish prosecutorial misconduct, St. Ours has the burden of establishing that the challenged conduct was both improper and prejudicial. *State v. Cheatam*, 150 Wn.2d 626, 652,

81 P.3d 830 (2003). We review the prosecutor's conduct "by examining that conduct in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'" *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotations marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

If the appellant failed to object to misconduct at trial, he is deemed to have waived any error unless he establishes that the misconduct was so flagrant and ill intentioned that it caused an enduring prejudice that could not have been cured with an instruction to the jury, and the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury verdict. *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012); *State v. Thorgerson*, 172 Wn.2d 438, 442-43, 258 P.3d 43 (2011). The focus of this inquiry is more on whether the resulting prejudice could have been cured, rather than the flagrant or ill-intentioned nature of the remark. *Emery*, 174 Wn.2d at 762.

### B. COMMENT ON OFFICER THIRY'S BELIEF

St. Ours argues that the prosecutor improperly commented that Officer Thiry believed the drugs and backpack belonged to St. Ours and that the prosecutor misstated the record when she stated that the officer had "told" the jurors he believed the drugs belonged to St. Ours. This statement clearly misstated the evidence; Officer Thiry did not give any such testimony. But St. Ours did not object to this argument, and he fails to show that this potential error could not have been cured by a proper, timely instruction. Accordingly, St. Ours has waived this argument.

### C.  COMMENT ON BACKPACK'S CONTENT

In contrast, St. Ours objected to the prosecutor's argument that the backpack did not contain anything linking it to Herbert.  We agree that this argument is not based on the facts in evidence nor was it a reasonable inference from the record.  Officer Thiry testified only that he did not find anything linking the backpack to St. Ours when he searched it for weapons—he did not testify that there was nothing else in the backpack that could have identified a different owner nor did he testify as to whether there was anything other than the drug evidence and drug paraphernalia in the backpack.  And neither party asked Officer Thiry if there was other identifying information in the backpack.  Thus, this argument was improper.

We now turn to whether this improper argument was prejudicial.  *Emery*, 174 Wn.2d at 760.  We hold that it was.

This improper argument was clearly relevant to whether the backpack belonged to St. Ours, which, in turn, was critical to St. Ours's unwitting possession claim.  And there was no evidence at trial apart from St. Ours's physical possession of the backpack linking him to the backpack.  Thus, this argument incorrectly stating that there was no exculpatory evidence in the backpack had the potential to be highly prejudicial to St. Ours's unwitting possession affirmative defense.

Furthermore, although we consider the State's argument in light of the jury instructions and the trial court had instructed the jury that counsels' argument was not evidence, the trial court did not direct the jury to that instruction when it overruled St. Ours's objection.  Instead, it stated, "I think it's arguing the evidence before the jury." RP (July 10, 2013) at 128.  This statement essentially endorsed the State's improper argument as an accurate statement of the record and could have influenced whether the jury independently evaluated the State's argument in light of

14

the record. Because the improper argument went to the core of St. Ours's unwitting possession defense, there was little direct evidence of who owned the backpack, and the jury could have construed the trial court's ruling on St. Ours's objection to this statement as an endorsement of the prosecutor's erroneous statement of the facts, we hold that St. Ours has shown that the improper argument had a substantial likelihood of affecting the verdict.

Accordingly, we reverse and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
JOHANSON, C.J.

We concur:

_____
MAXA, J.

_____
LEE, J.