79 P.3d 451 (2003)
STATE of Washington, Respondent,
v.
Marlon HOWELL, Appellant.
No. 51006-1-I.
Court of Appeals of Washington, Division 1.
September 22, 2003.
Publication Ordered November 14, 2003.
*452 Eric J. Nielsen, Nielsen Broman Koch Pllc, Seattle, WA, for Appellant.
Deric Martin, King County Pros. Ofc/Appellate Unit, Seattle, WA, for Respondent.
PER CURIAM.
Marlon Howell was convicted of unlawful possession of a firearm in the first degree. He appeals his conviction on several grounds: first, that the trial court abused its discretion by refusing to dismiss the case for violation of his speedy trial rights; second, that the trial court abused its discretion by using the State's proposed jury instruction on constructive possession rather than the version he provided; and third, that he received ineffective assistance of counsel. Howell alleged additional grounds for review pro se, arguing the search that revealed the gun was unconstitutional, his signed confession was coerced, the trial court erred in failing to dismiss his case for governmental misconduct, he was denied access to discovery materials that would have assisted him in preparing his defense, and the prosecutor's misconduct deprived him of a fair trial. We reject these arguments, and affirm.

FACTS
Federal Way police officers John Stray and Chris Walker responded to a call concerning a disturbance at a motel. The motel manager had earlier rented a room to Marlon Howell, but no longer wanted Howell in the motel because he believed drug activity had occurred in the room. When the officers arrived, they observed a vehicle parked in *453 front with the passenger door open and a woman in the driver's seat.
Officer Stray spoke with the driver, while Officer Walker contacted Howell and the motel manager. Howell told Walker he was the front seat passenger in the vehicle. Stray asked the driver, Sarah Sage, if she had been using drugs; she responded in the negative and invited Stray to look in the car. When Stray opened the glove box, a gun dropped out. Stray yelled "gun," and Walker immediately put Howell in handcuffs for officer safety. Report of Proceedings (RP) (Jul. 15, 2002) at 107.
Stray spoke with Howell, who immediately admitted the gun was his and that he knew he was not allowed to have it because of his three felony convictions. Howell then called out to Sage, telling her to cooperate with the police because he had already told Walker the gun belonged to him. Stray placed Sage in handcuffs and read Miranda[1] warnings to Howell and Sage.
Walker took Howell to the Federal Way Police Department. Howell signed a written Miranda waiver and a statement admitting the gun was his and that he knew he was not supposed to have it because of his prior convictions.
Howell was charged with unlawful possession of a firearm in the first degree. He was found guilty by jury, and sentenced to 36 months. This appeal followed.

DISCUSSION
Speedy Trial
Howell's initial speedy trial expiration date was June 8, but he executed an express waiver to June 14. On June 12, the trial court granted a four-day continuance over Howell's objection, to allow the state crime lab to test-fire the gun and deliver the results to the prosecutor. Howell argues that the trial court erred by declining to dismiss his case for violation of the speedy trial rule and that his conviction should therefore be reversed.
Citing State v. Wake, 56 Wash.App. 472, 783 P.2d 1131 (1989), he contends the trial court did not have discretion to grant the State's motion for a continuance to accommodate congestion in the state crime lab. In Wake, we held that the trial court abused its discretion by granting the State's motion for a 30-day continuance because its expert witness from the crime lab was not available for trial. Wake, 56 Wash.App. at 473, 783 P.2d 1131. In so holding, we explained that the State had not maintained adequate staff to keep pace with the growing number of drug cases and that congestion at the crime lab was a direct result of this failure. Wake, 56 Wash.App. at 475, 783 P.2d 1131. We held this sort of foreseeable administrative congestion is an insufficient basis on which to grant a continuance because "[i]f congestion at the state crime lab excuses speedy trial rights, there is insufficient inducement for the State to remedy the problem." Wake, 56 Wash.App. at 475, 783 P.2d 1131 (citing State v. Mack, 89 Wash.2d 788, 576 P.2d 44 (1978)).
Howell's case does not present the same situation. As the trial court explained, the crime lab's congestion was caused by investigation of the Green River murders, presenting "a very unusual case in the State and perhaps United States, if not the world," requiring the State to expend extraordinary resources. RP (June 12, 2002) at 10. The State could not be expected to anticipate the crush of work generated by this unique investigation, so the reasoning behind Wake does not apply; there is no problem the State may be induced to remedy.
Furthermore, in Wake, the State waited until the day before trial to move for a lengthy continuance, even though it was aware the expert would be unavailable two weeks before. Wake, 56 Wash.App. at 475-76, 783 P.2d 1131. In Howell's case, the prosecutor requested the brief, four-day continuance as soon as it became apparent the test-fire results would not be available in time for trial.
Under these circumstances, the trial court was within its discretion to grant the continuance. Howell's speedy trial right was not violated and he was not entitled to dismissal.
*454 Jury Instructions
Howell contends the trial court abused its discretion when it instructed the jury on the law of constructive possession. We review a trial court's decision to reject a party's jury instruction for an abuse of discretion. State v. Pesta, 87 Wash.App. 515, 524, 942 P.2d 1013 (1997) (citing Herring v. Dep't of Social & Health Servs., 81 Wash. App. 1, 22, 914 P.2d 67 (1996)). Jury instructions are sufficient as long as they permit each party to argue his or her theory of the case, are not misleading, and, when read as a whole, properly inform the jury of the applicable law. Pesta, 87 Wash.App. at 524, 942 P.2d 1013 (citing Brown v. Spokane County Fire Prot. Dist. No. 1, 100 Wash.2d 188, 194, 668 P.2d 571 (1983)).
The trial court adopted the State's proposed instruction, which read: "Constructive possession occurs when there is no actual physical possession but there is dominion and control over the item." Clerk's Papers at 32. Howell took exception to the instruction, proposing inclusion of the phrase "and such dominion and control may be immediately exercised." Br. of App. at 16. This instruction, however, applies when the State seeks to prove a defendant committed a crime with a deadly weapon in order to enhance the defendant's sentence, which requires the State to prove that the firearm was readily accessible. See State v. Johnson, 94 Wash.App. 882, 974 P.2d 855 (1999).
The instruction offered by the State and accepted by the trial court accurately informed the jury of the applicable law and did not preclude Howell from arguing his theory of the case. Howell's defense was that the police officers were biased and decided he was guilty of the crime before completing a thorough investigation. Whether or not he had immediate access to the weapon was not relevant to this theory.
Howell's proposed instruction was not accurate because it added an element to the crime of unlawful possession of a firearm that is not included in the criminal statute. RCW 9.41.040(1)(a) provides that this crime is committed when "[a] person ... owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted ... of any serious offense as defined in this chapter." There is no requirement that the firearm be immediately accessible. The trial court did not abuse its discretion by rejecting Howell's proposed instruction.
Ineffective Assistance of Counsel
During trial, Howell's attorney cross-examined Detective Jeff Paynter, eliciting the fact that prints found on the gun were not Howell's, but police did not attempt to match the prints to anyone else. On redirect, the prosecutor asked whether the detective's decision to refer the case to the prosecutor's office would have been different had the fingerprints been matched to any of the other people involved in the incident. Paynter responded "No, ma'am, it would not have. The elements of the crime of unlawful possession of a firearm first degree would still have been met even had the fingerprints returned to Ms. Sage or Ms. Carson." RP (Jul. 16, 2002) at 6. After the prosecutor rephrased the question slightly, Paynter reiterated his statement: "No, it would not have changed my decision in any way. The facts of the incident that I had uncovered indicated to me that the statute had been violated and it was necessary to send it forward to the prosecutor's office for review." RP (Jul. 16, 2002) at 7. Howell's attorney did not object.
Howell argues that his attorney's failure to object to Detective Paynter's testimony deprived him of the effective assistance of counsel. To establish a claim of ineffective assistance of counsel, Howell must prove both that his trial attorney's representation was deficient and that the deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Thomas, 109 Wash.2d 222, 225-26, 743 P.2d 816 (1987). In determining whether a defendant has met the first prong of this test, "scrutiny of counsel's performance is highly deferential and courts will indulge in a strong presumption of reasonableness." Thomas, 109 Wash.2d at 226, 743 P.2d 816. Trial conduct that can be characterized as legitimate trial strategy or tactics cannot form the basis for a claim of *455 ineffective assistance of counsel. State v. McNeal, 145 Wash.2d 352, 362, 37 P.3d 280 (2002) (citing State v. Adams, 91 Wash.2d 86, 90, 586 P.2d 1168 (1978)). If the defendant meets the first burden, the second prong requires the defendant to show only a "reasonable probability" that the outcome of the trial would have been different absent the attorney's deficient performance. Strickland, 466 U.S. at 693, 104 S.Ct. 2052; Thomas, 109 Wash.2d at 226, 743 P.2d 816.
It is not unlikely that an objection to Paynter's testimony would have been sustained had Howell's attorney made one. Paynter essentially stated his opinion that Howell was guilty, which is improper, especially when given by an official. See State v. Farr-Lenzini, 93 Wash.App. 453, 459-60, 970 P.2d 313 (1999) (holding that no witness may offer an opinion on the defendant's guilt as it invades the province of the jury). However, counsel's failure to object to Paynter's testimony may have been the product of sound trial strategy. As previously noted, Howell's defense was that the police were biased against him and would have pursued the case against him regardless of the evidence. From the beginning of trial, Howell characterized the prosecution as "a case about harassment." RP (Jul. 16, 2002) at 74. In his closing argument, Howell's attorney explicitly accused Officer Stray of lying, forging part of Sage's written statement, and perjuring himself on the witness stand in order to convict Howell. Given this strategy, Howell's defense was arguably strengthened by Detective Paynter's testimony that he would have referred the case to the prosecutor's office even in the face of potentially exculpatory evidence.
Further, it is difficult to see any reasonable probability that Howell would have been acquitted absent his counsel's failure to object to this testimony. Howell had twice confessed that the gun belonged to him and that he knew that he was not allowed to have a gun because of his criminal history.
Howell has not demonstrated that his trial counsel's failure to object amounted to conduct falling "below an objective standard of reasonableness based on consideration of all of the circumstances." Strickland, 466 U.S. at 688, 104 S.Ct. 2052. Nor has he established that his defense was prejudiced as a result. Accordingly, counsel's performance did not deprive Howell of a fair trial.
Pro Se Arguments
In his statement of additional grounds for review, Howell challenges several of the trial court's other rulings. He contends the trial court abused its discretion by rejecting his motions to suppress the gun as the product of an illegal search and to suppress his confession as the product of coercion. Howell also maintains the trial court erred by refusing to dismiss his case for governmental misconduct. Finally, Howell argues for the first time on appeal that he was denied access to discovery materials that would have assisted him in his defense and that prosecutorial misconduct deprived him of a fair trial.
All but the latter of these claims were presented at trial. The trial court heard testimony from Officers Stray, Walker, and Ellis, as well as from Sarah Sage, and made specific findings of fact. Because the trial court is in a better position to evaluate testimony and witness demeanor, we review the trial court's factual findings with great deference and will not disturb them unless they are clearly erroneous. State v. Clark, 143 Wash.2d 731, 752, 24 P.3d 1006 (2001).
The court found that Sage invited the search of his vehicle by Officer Stray and that Stray opened the glove box and found the gun only after this invitation. Nothing in the record calls this finding into question. The court also found that Howell was advised of his Miranda rights at the scene and again at the police station, that he knowingly and voluntarily waived his rights, and was not threatened, coerced, or induced to make a statement. The record supports these findings.
Howell alleges Offficer Stray forged part of Sage's written statement wherein she states she consented to the search of her car, and that he then perjured himself when he testified about that. Sage testified that she did not give that part of the statement. The trial court explicitly found Sage's testimony not credible because she could not remember *456 many of the events at issue and, as Howell's girlfriend, may have had motive to lie. Since Sage's testimony was the only evidence supporting Howell's CrR 8.3 motion to dismiss for governmental misconduct, the trial court did not abuse its discretion by refusing to grant the motion.
Howell next argues he was denied access to discovery materials that would have assisted him in his defense. Howell does not identify the materials he is referring to. The only such indication in the record relates to Howell's written Miranda waiver, originally on the reverse side of his written statement, which was inadvertently omitted when the statement was provided to the defense. However, when the defense received the document shortly before trial, it did not indicate any concern that the late discovery would prejudice its case or otherwise affect trial preparation, nor did it request any remedy provided under CrR 4.7. In any event, Howell failed to raise this issue at trial and does not contend that this was a manifest error affecting a constitutional right that would entitle him to raise the issue for the first time on appeal. RAP 2.5.
Howell's final pro se argument is that he was denied a fair trial due to prosecutorial misconduct. He alleges the prosecutor intentionally avoided contact with a potential defense witness and thereby prevented the witness from testifying. The record indicates that the opposite is true. In her June 12 motion for continuance, the prosecutor stated that she had been unable to contact the witness despite repeated requests for defense counsel's assistance in the matter, which Howell's attorney acknowledged. Howell's argument is therefore without merit.
Affirmed.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).