# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46869-7-II |
| Respondent, | |
| v. | |
| BRIAN ALAN OLESON, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – Brian Oleson appeals his convictions of two counts of second degree unlawful possession of a firearm and one count of possession of methamphetamine and also appeals the imposition of legal financial obligations (LFOs).

We hold that (1) the charging document was sufficient even though it failed to identify the specific firearm that supported each of the unlawful possession of a firearm counts, (2) the State presented sufficient evidence that Oleson constructively possessed firearms and methamphetamine, (3) the trial court's constructive possession instruction correctly stated the law because having the immediate ability to take actual possession is not required to prove constructive possession, (4) the trial court did not err in giving a reasonable doubt instruction that was identical to Washington Pattern Instruction: Criminal (WPIC) 4.01,[1] (5) the prosecutor's comments that "there's certainly things you don't know," and that the jury had not heard the

---

[1] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at 85 (3d ed. 2008).

"back-story," Report of Proceedings (RP) (Sept. 15, 2014) at 601, did not have a substantial likelihood of affecting the jury's verdict because the trial court instructed the jury to disregard the comments, and (6) we exercise our discretion to not consider Oleson's claim that the trial court erred in imposing LFOs because he did not object to the imposition of LFOs at sentencing.

Oleson also argues, and the State concedes that the trial court erred in imposing an LFO of $100 to the Kitsap County expert witness fund without statutory authority. We accept the State's concession.

Accordingly, we affirm Oleson's convictions and sentence, but remand to strike the requirement that Oleson pay a $100 LFO to the Kitsap County expert witness fund.

FACTS

Oleson, a convicted felon, was in a relationship with Susan Christopher. At 6:12 AM on December 31, 2013, police executed a search warrant for drugs and firearms at Christopher's trailer home in Bremerton. Both Oleson and Christopher were inside the trailer at the time.

Kitsap County Detectives Tim Keeler and Todd Byers noticed a plate in the dining area that had white powder and a tube and razor on it. In the kitchen and living room, Byers found small plastic baggies with powdery residue and four glass pipes that had burnt residue inside. The white powder tested positive as methamphetamine.

In the master bedroom, Keeler saw a Savage .22 caliber rifle leaning on a pile of clothing. He found magazines fitting the rifle on the bedroom dresser. He also found a Beretta 9 mm pistol that was sticking out of a fanny pack near the foot of the bed. Inside the fanny pack was a magazine fitting the pistol. Detective Andrew Ejde found a loaded .357 magnum in an open safe near the bed. Near the bed was a box of various kinds of ammunition.

Also in the master bedroom Keeler found a piece of mail from the Department of Social and Health Services addressed to Oleson showing the address of Christopher's home. Detective Michael Grant found a handwritten letter on the bedroom dresser addressed to "Susan and Brian" and bearing Christopher's address. There also was a sign on the floor near the bed that said "Susan and Brian" in ornate lettering. Finally, Keeler found a casino card bearing Oleson's name.

Grant arrested Oleson, read him his *Miranda*[2] rights, and questioned him in a patrol car with Ejde observing. According to Ejde, Oleson told Grant that he knew he was in custody because of the guns. Oleson said that Christopher was his girlfriend, that he had lived in her house for two years, and that he knew he was not supposed to be around firearms as a convicted felon.

The State charged Oleson with three counts of second degree unlawful possession of a firearm and one count of possession of a controlled substance (methamphetamine). In the information, each count of unlawful possession of a firearm used the exact same language and none identified which specific firearm supported the count. Oleson did not request a bill of particulars to clarify which firearm supported each count.

At trial, the State and Oleson proposed slightly different versions of jury instructions defining possession and constructive possession. Both proposed instructions were based on WPIC 50.03. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 50.03, at 949 (3d ed. 2008). The only difference was that Oleson's instruction included the bracketed term "immediate" from WPIC 50.03 in the phrase "whether the defendant

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

had the [immediate] ability to take actual possession of the substance." Clerk's Papers (CP) at 9. The trial court gave the State's proposed instructions.

The trial court gave a reasonable doubt instruction that was identical to WPIC 4.01. The instruction stated that "[a] reasonable doubt is one for which a reason exists" and asked the jury to consider whether they had "an abiding belief in the truth of the charge." CP at 52. Oleson did not object to this instruction.

During closing argument, the State elected which firearm related to each count of unlawful possession of a firearm. The State stated that count 1 was for the Savage .22 caliber rifle, count 2 was for the Beretta 9 mm pistol, and count 3 was for the .357 magnum.

In his closing argument, Oleson repeatedly argued that there was a lack of evidence to support the charges. He specifically criticized the State for not producing fingerprint evidence. In her rebuttal argument, the prosecutor argued that obtaining fingerprints was not a real option for investigating officers, and asked the jury to consider whether that was a meaningful lack of evidence. She then stated that "there's certainly things you don't know in this case. There's a back-story that you don't know." RP (Sept. 15, 2014) at 601. Oleson objected. The trial court sustained the objection and instructed the jury to "disregard the comment regarding a back-story." RP (Sept. 15, 2014) at 601.

The jury found Oleson guilty of possession of methamphetamine and two of the three counts of second degree unlawful possession of a firearm, but found him not guilty on the firearm count related to the .357 magnum that was in the safe. At sentencing, the trial court imposed discretionary LFOs, including payment of $100 to the Kitsap County expert witness fund.

Oleson appeals his convictions and sentence.

ANALYSIS

A.    ADEQUACY OF THE CHARGING DOCUMENT

Oleson argues that the information was inadequate because it failed to specify which firearm supported each charge of second degree unlawful possession of a firearm.  We hold that (1) the information was constitutionally sufficient because it alleged all the essential elements of the offense, and (2) Oleson waived a vagueness claim by failing to request a bill of particulars at trial.

1.    Legal Principles

A constitutionally sufficient charging document must include all essential elements of a crime.  *State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013).  The primary goal of the essential elements rule is to give notice to an accused of the nature of the crime that he or she must be prepared to defend against, and the secondary purpose is to bar any subsequent prosecution for the same offense.  *Id.* at 158-59.

When a defendant challenges the sufficiency of a charging document for the first time on appeal, we will liberally construe the language of the charging document in favor of validity.  *Id.* at 161.  In liberally construing the charging document, we employ the two-pronged *Kjorsvik* test: (1) do the necessary elements appear in any form, or by fair construction, on the face of the document and, if so, (2) can the defendant show he or she was actually prejudiced by the inartful language.  *State v. Kjorsvik*, 117 Wn. 2d 93, 105-06, 812 P.2d 86 (1991).

However, we distinguish between charging documents that are constitutionally deficient because of the State's failure to allege each essential element of the crime charged and those that

are merely factually vague as to some other significant matter. *State v. Mason*, 170 Wn. App. 375, 385, 285 P.3d 154 (2012). Because a bill of particulars can correct a vague charging document, a defendant waives a challenge to a charging document for vagueness on appeal if he or she fails to request a bill of particulars at trial. *Id.*

2.      Sufficiency Analysis

The State charged Oleson with second degree unlawful possession of a firearm. The elements of second degree unlawful possession of a firearm are that the person (1) knowingly owns, has in his or her possession, or has in his or her control any firearm, (2) after having previously been convicted or found not guilty by reason of insanity in this state or elsewhere of a felony, and (3) the ownership or possession or control of the firearm took place in Washington. RCW 9.41.040(2)(a)(i); *see* WPIC 133.02.02.

The amended information charged three separate counts of second degree unlawful possession of a firearm, but the same language was used for each count. The State charged:

> On or about December 31, 2013, in the County of Kitsap, State of Washington, the above-named Defendant did knowingly own, possess, or have in his or her control a firearm, after having been previously convicted of Assault Third Degree; contrary to the Revised Code of Washington 9.41.040(2)(a)(i).

CP at 42-43. The information did not specify which firearm served as the basis of each count.

Here, the information provided facts supporting every element of the offense as required by the essential elements rule. The information apprised Oleson of the elements of the crime charged and the conduct that was alleged to have constituted that crime. *Kjorsvik*, 117 Wn.2d at 98. The type of firearm is not an essential element of the crime, because possessing *any* firearm is prohibited by RCW 9.41.040(2)(a)(i). *Cf. Zillyette*, 178 Wn.2d at 159-61 (holding that because under the controlled substance homicide statute not *all* controlled substances may serve

6

as the basis for controlled substances homicide, simply alleging that a "person delivered a controlled substance" violates the essential elements rule when charging controlled substance homicide because it is over inclusive and does not establish the illegality of the behavior). Therefore, simply stating "firearm" is sufficient to establish the illegality of the behavior charged and the information satisfies the first prong of the *Kjorsvik* test.

Further, Oleson cannot show actual prejudice as required by the second prong of the *Kjorsvik* test. Under the second prong, we may look outside of the information itself and to the circumstances of the charging process to determine whether Oleson was reasonably informed of the nature of the charge. *Kjorsvik*, 117 Wn.2d at 106. Because the statement of probable cause clearly identified the three different firearms, there was no actual prejudice.

Oleson argues that the lack of specific firearms in the information prevents him from arguing double jeopardy as a defense to possible future charges. He relies on *Russell v. United States*, 369 U.S. 749, 763-64, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962). But in that case the United States Supreme Court noted that if petitioners needed to plead a former acquittal or conviction, "they could rely upon other parts of the present record in the event that future proceedings should be taken against them." *Id.* at 764. Therefore, this argument fails because any future court would be able to look beyond the information for double jeopardy purposes.

3. Vagueness Analysis

A charging document that meets the essential elements test, but is otherwise vague as to some significant matter may inhibit the defendant's ability to adequately prepare a defense. *See State v. Bergeron*, 105 Wn.2d 1, 17-18, 711 P.2d 1000 (1985). However, the appropriate

procedure in such a case is for the defendant to file a motion for a bill of particulars to require the prosecutor to clarify the vague charging document. *Id* at 18.

Here, Oleson did not request a bill of particulars in the trial court. Therefore, he waived any claim of vagueness. *Mason*, 170 Wn. App. at 385.

Accordingly, we hold that the information was sufficient with regard to the second degree unlawful possession of a firearm charges.

B.      SUFFICIENCY OF THE EVIDENCE

Oleson argues that the State presented insufficient evidence to show that he constructively possessed the firearms or methamphetamine. We disagree.

1.      Legal Principles

When evaluating the sufficiency of evidence for a conviction, the test is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). We will assume the truth of the State's evidence and all reasonable inferences drawn from that evidence when evaluating whether sufficient evidence exists. *Id.* at 106. We also will defer to the trier of fact's resolution of conflicting testimony and evaluation of the persuasiveness of the evidence. *Id.*

2.      Evidence of Constructive Possession

The trial court instructed the jury on the firearm charges and the methamphetamine charge using possession instructions based on WPIC 50.03 that listed a number of factors to consider:

> Constructive possession occurs when there is no actual physical possession but there is dominion and control over the item.

8

> Proximity alone without proof of dominion and control is insufficient to establish constructive possession. Dominion and control need not be exclusive to support a finding of constructive possession.
>
> In deciding whether the defendant had dominion and control over an item, you are to consider all the relevant circumstances in the case. Factors that you may consider, among others, include whether the defendant had the ability to take actual possession of the item, whether the defendant had the capacity to exclude others from possession of the item, and whether the defendant had dominion and control over the premises where the item was located. No single one of these factors necessarily controls your decision.

CP at 63, 69. Oleson did not object to this portion of the instructions, and therefore it is the law of the case. *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998).

Further, case law supports the factors listed in WPIC 50.03. *See*, *e.g.*, *State v. Chouinard*, 169 Wn. App. 895, 903, 282 P.3d 117 (2012) (holding that backseat passenger's proximity to a weapon and knowledge of its presence in a vehicle was not enough to establish constructive possession); *State v. Bowen*, 157 Wn. App. 821, 828, 239 P.3d 1114 (2010) (holding that defendant had constructive possession over a gun and drugs in a vehicle when he was the owner, driver, and sole occupant of the vehicle); *State v. Echeverria*, 85 Wn. App. 777, 783, 934 P.2d 1214 (1997) (holding that the driver of a borrowed car had constructive possession of a gun that was in plain view partially under the driver's seat because he knew it was there and had the ability to take actual possession); *State v. Hagen*, 55 Wn. App. 494, 499, 781 P.2d 892 (1989) (holding that dominion and control requires more than just the ability to reduce an object to actual possession, though that is one factor to consider); *State v. Edwards*, 9 Wn. App 688, 690, 514 P.2d 192 (1973) (holding the ability to exclude others is a factor relevant to dominion and control).

The State presented sufficient evidence regarding whether Oleson had constructive possession of the firearms and methamphetamine in Christopher's house. The evidence showed that Oleson had the ability to take actual possession of the firearms and methamphetamine. Oleson was inside the house when police executed the search warrant. The State provided extensive testimony from law enforcement officers about the size and layout of the house and the specific locations of the firearms and methamphetamine within the home. Their testimony established that regardless of where Oleson had been in the home, he would have necessarily been near a firearm and methamphetamine. Keeler testified that the master bedroom, where all the firearms were located, did not have a door. There was drug paraphernalia in the dresser and on the bed in the bedroom, on the table in the family room, and on the desk in the kitchen dining area.

The State also presented evidence that Oleson had dominion and control over Christopher's house. Oleson told officers that Christopher was his girlfriend and that he had lived at Christopher's house for two years. An online address change request had been submitted to the Department of Licensing changing Oleson's address of record to Christopher's home address. Officers found mail addressed to Oleson at Christopher's address and a casino card bearing Oleson's name. Finally, there was a sign on the floor near the bed that said "Susan and Brian" in ornate lettering.

Although Oleson presented evidence that he only stayed at Christopher's house a few nights a week and maintained a different residence, we defer the trier of fact's resolution of conflicting testimony. *Homan*, 181 Wn.2d at 106. Similarly, Oleson's argument that the State failed to present sufficient evidence because it did not show that he was the owner of the home or

firearms or methamphetamine fails because the jury was instructed to consider all the relevant factors in determining dominion and control, and no single factor, such as actual ownership, controls dominion and control. *See* WPIC 50.03. The jury was instructed to consider all relevant circumstances, and we defer to the jury's weighing of the evidence and relevant factors. *Homan*, 181 Wn.2d at 106.

Accordingly, we hold that the State presented sufficient evidence that Oleson constructively possessed the Savage .22 rifle, the Beretta 9 mm pistol, and the methamphetamine.

C. CONSTRUCTIVE POSSESSION JURY INSTRUCTION

Oleson argues that the trial court erred by failing to instruct the jury that a requirement of constructive possession is that he have the *immediate* ability to take actual possession of the firearms or methamphetamine. The State argues that the inclusion of the word "immediate" was not appropriate in this case. We agree with the State.

1. Legal Principles

We review a trial court's decision to reject a party's proposed jury instruction for abuse of discretion. *State v. Green*, 182 Wn. App. 133, 152, 328 P.3d 988, *review denied*, 337 P.3d 325 (2014). Jury instructions are sufficient if they allow the parties to argue their theories of the case, properly inform the jury of the applicable law, and are supported by the evidence. *Id.* "It is reversible error to refuse to give a proposed instruction only if the instruction properly states the law and the evidence supports it." *Id.* But it is not error for a trial court to refuse a specific instruction when a more general instruction adequately explains the law and allows each party to argue its case theory. *Id.*

11

2.    Omission of "Immediate" from Possession Instruction

Here, both Oleson and the State proposed a jury instruction based on WPIC 50.03, which defined possession and constructive possession. WPIC 50.03 provides, in part:

In deciding whether the defendant had dominion and control over a substance, you are to consider all the relevant circumstances in the case. Factors that you may consider, among others, include [whether the defendant had the [*immediate*] ability to take actual possession of the substance,]

(Emphasis added.) The parties disagreed over whether to include the bracketed modifier "immediate" before the phrase "ability to take actual possession."

The comments following WPIC 50.03 emphasize that there is no clear definition of "dominion and control," and that the instruction seeks to list a nonexclusive list of factors, culled from case law, that the jury may consider. WPIC 50.03 cmt. at 950 (titled "Dominion and control – Lack of direct definition"). The final paragraph of the comment section discusses the ability to take immediate actual possession:

The analysis in some cases requires that the ability to take possession be immediate. See, e.g., State v. Jones, 146 Wn.2d at 333 ("Dominion and control means that the object may be reduced to actual possession immediately"). Other cases, however, have stated the factor without the immediacy requirement. See, e.g., State [v.] McReynolds, 117 Wn.App. at 341. Another case has held that the immediacy requirement applies only in the context of deadly weapon enhancements, which require that the weapon be readily available. See State v. Howell, 119 Wn.App. 644, 649, 79 P.3d 451 (2003).

WPIC 50.03 cmt. at 953-54 (titled "Factor – Ability to take actual possession").

The State argues that *Howell* should control because it was an unlawful possession of a firearm case. We agree. In *Howell*, Division One of this court held that the proposed instruction, which included immediacy language, "was not accurate because it added an element to the crime of unlawful possession of a firearm that is not included in the criminal statute. . . .

There is no requirement that the firearm be immediately accessible."[3]  119 Wn. App. 644, 650, 79 P.3d 451 (2003).

*Howell* controls.  Oleson's proposed instruction would have had the same effect as the rejected instruction in *Howell* – improperly adding the requirement that the firearm be immediately accessible.  The same reasoning applies to possession of methamphetamine because RCW 69.50.4013(1) does not require that the drugs be immediately accessible.  Therefore, Oleson's proposed instruction was not an accurate statement of the law.  Accordingly, the trial court did not abuse its discretion in denying Oleson's proposed possession instruction.

D.      REASONABLE DOUBT INSTRUCTION

Oleson argues that the trial court's reasonable doubt jury instruction, which was identical to WPIC 4.01, was constitutionally deficient because it (1) required the jury to identify a reason for having a reasonable doubt and (2) impermissibly focused the jury on a search for the truth of the charge.  We disagree.[4]

The trial court's reasonable doubt instruction stated, in part:

A reasonable doubt is one *for which a reason exists* and may arise from the evidence or lack of evidence.  It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence.  If, from such consideration, you have *an abiding belief in the truth of the charge*, you are satisfied beyond a reasonable doubt.

---

[3] The language at issue in *Howell* was not exactly the same as the language at issue here.  The proposed instruction in *Howell* was "such dominion and control may be immediately exercised." 119 Wn. App. at 649.

[4] There is nothing in the record showing that Oleson objected to this instruction.  This court generally does not consider issues raised for the first time on appeal.  RAP 2.5(a).  However, the State does not argue that we should not consider Oleson's argument on this ground.

CP at 52 (emphasis added). This language was taken verbatim from WPIC 4.01.

In *State v. Bennett*, the Supreme Court directed trial courts to use only WPIC 4.01 to instruct juries on the burden of proof and the definition of reasonable doubt. 161 Wn.2d 303, 318, 165 P.3d 1241 (2007). In *State v. Kalebaugh*, the Supreme Court more recently reaffirmed that WPIC 4.01 was the "proper" instruction and "the correct legal instruction on reasonable doubt." 183 Wn.2d 578, 585-86, 355 P.3d 253 (2015); *see also State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012) (stating that the prosecutor "properly" described reasonable doubt as a doubt for which a reason exists).[5]

The court in *Kalebaugh* did not specifically address Oleson's argument that the phrase "[a] reasonable doubt is one for which a reason exists" in WPIC 4.01 is improper. However, the court distinguished between the proper language of WPIC 4.01 (a doubt "for which a reason *exists*") and the trial court's improper additional instruction in that case ("a doubt for which a reason *can be given*"). *Id.* at 581-82 (emphasis added). We hold that *Bennett* and *Kalebaugh* control here.

With regard to Oleson's challenge to the "abiding belief in the truth of the charge" phrase in WPIC 4.01, the Supreme Court has rejected challenges to that language. *E.g.*, *State v. Pirtle*, 127 Wn.2d 628, 657-58, 904 P.2d 245 (1995). In addition, Division One of this court has held that *Bennett* controls when considering challenges to that language. *State v. Kinzle*, 181 Wn. App. 774, 784, 326 P.3d 870, *review denied*, 181 Wn.2d 1019 (2014). The court stated that the

---

[5] Oleson argues that the trial court's reasonable doubt instruction resembles the improper "fill in the blank" arguments that constitute prosecutorial misconduct. *See Emery*, 174 Wn.2d at 760. The Supreme Court did not address this argument in *Kalebaugh* or *Emery*, but we are bound by the approval of the WPIC 4.01 reasonable doubt language in those cases.

phrase merely elaborates on what it means to be satisfied beyond a reasonable doubt and does not suggest that the jury's job is to search for the truth. *Id.*

We hold that the trial court did not err in giving the reasonable doubt instruction identical to WPIC 4.01.

E.      PROSECUTORIAL MISCONDUCT

Oleson argues that the prosecutor's rebuttal argument comments that "there's certainly things you don't know in this case" and "[t]here's a back-story that you don't know" require reversal. We hold that even assuming that the prosecutor's comments were improper, Oleson cannot establish prejudice.

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). To establish prejudice, a defendant who objected to the prosecutor's misconduct at trial must show that the misconduct had a substantial likelihood of affecting the jury's verdict. *State v. Allen*, 182 Wn.2d 364, 375, 341 P.3d 268 (2015).

Here, the prosecutor's comments did not likely affect the jury's verdict because the trial court sustained defense counsel's objection and instructed the jury to disregard the backstory comment. We presume that the jury follows the trial court's instructions. *State v. Elkins*, 188 Wn. App. 386, 408, 353 P.3d 648, *review denied*, 184 Wn.2d 1025 (2015). Therefore, Oleson has not met his burden of showing a substantial likelihood that the prosecutor's comments affected the jury verdict.

Accordingly, we hold that prosecutor's comments were not prejudicial and Oleson's prosecutorial misconduct claim fails.

F.      LEGAL FINANCIAL OBLIGATIONS

Oleson argues that the trial court erred in imposing legal financial obligations without first inquiring into Oleson's ability to pay. We decline to consider this claim.

Oleson did not challenge the trial court's imposition of LFOs at his sentencing, and therefore we have discretion to consider and to decline to consider his LFO claim on appeal. *State v. Blazina*, 182 Wn.2d 827, 832, 834-35, 344 P.3d 680 (2015). We determine whether to exercise our discretion on a case by case basis.

Here, Oleson has provided no special circumstances that would compel us to consider his unpreserved LFO challenge. Oleson relies only on the fact that the trial court found him indigent and at the same time imposed LFOs. However, at sentencing Oleson's former employer testified that Oleson was a good employee and that he wanted to employ Oleson again when he finished his sentence. In addition, Oleson requested a Drug Offender Sentencing Alternative and may have had a strategic reason for not arguing at sentencing that he had no ability to pay LFOs.

Here, Oleson has not provided any compelling reason why we should exercise our discretion in this case. We decline to exercise our discretion to consider Oleson's LFO challenge.

However, the State concedes that the trial court erred in requiring Oleson to pay $100 to the Kitsap County expert witness fund because that obligation was not authorized by statute. We accept the State's concession and remand to the trial court to strike the $100 expert witness fund obligation.

We affirm Oleson's convictions and sentence, but remand to strike the $100 LFO to the Kitsap County expert witness fund.

No. 46869-7-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, A.C.J.

We concur:

MELNICK, J.

SUTTON, J.